DECISION AND JOURNAL ENTRY
{¶ 1} Defendant, Mark R. Dolinar, appeals from the judgment of the Summit County Court of Common Pleas which found him guilty of three counts of breaking and entering and two counts of receiving stolen property, and sentenced him accordingly. We affirm.
 {¶ 2} Defendant and Michael Mollohan were jointly indicted on multiple counts of breaking and entering, receiving stolen property, and grand theft. Defendant was indicted for three counts of breaking and entering, in violation of R.C. 2911.13, one count of receiving stolen property, a felony of the fourth degree in violation of R.C. 2913.51, and one count of receiving stolen property, a felony of the fifth degree in violation of R.C. 2913.51. Prior to trial, Mollohan pleaded guilty to four counts of his indictment and agreed to testify against Defendant. A jury trial ensued on January 27, 2004. The jury found Defendant guilty of all counts, and the trial court sentenced him to an aggregate of thirty-seven months incarceration. Defendant timely appealed, raising four assignments of error for our review. For ease of discussion, we will discuss some assignments of error together.
 ASSIGNMENT OF ERROR I
"[Defendant's] conviction of three counts of breaking and entering and two counts of receiving stolen property were contrary to the manifest weight of the evidence."
 ASSIGNMENT OF ERROR II
"The trial court erred in failing to grant [Defendant's] [Crim.R. 29] motion to dismiss the breaking and entering and receiving stolen property charges following the conclusion of the State's evidence."
 {¶ 3} In his first two assignments of error, Defendant asserts that his convictions were against the manifest weight and not supported by sufficient evidence as a matter of law. Specifically, Defendant argues that the inconsistencies within Mollohan's testimony render it completely incredible, thus leaving Defendant's convictions without evidentiary support. We disagree.
 {¶ 4} Sufficiency of the evidence produced by the State and weight of the evidence adduced at trial are legally distinct issues. State v. Thompkins (1997), 78 Ohio St.3d 380, 386. As to sufficiency, Crim.R. 29(A) states that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." However, if the record demonstrates that reasonable minds may reach differing conclusions as to the proof of material elements of a crime, a trial court may not grant a Crim.R. 29(A) motion for acquittal. State v. Smith, 9th Dist. No. 20885, 2002-Ohio-3034, at ¶ 7, citing State v. Wolfe (1988),51 Ohio App.3d 215, 216. "`In essence, sufficiency is a test of adequacy.'" Smith at ¶ 7, quoting Thompkins,78 Ohio St.3d at 386.
 {¶ 5} "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." State v.Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at 3, citingThompkins, 78 Ohio St.3d at 390 (Cook, J., concurring). When a defendant maintains that his conviction is against the manifest weight of the evidence:
"an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986),33 Ohio App.3d 339, 340.
This power is to be invoked only in extraordinary circumstances where the evidence presented at trial weighs heavily in favor of a defendant. Id.
 {¶ 6} In the case at bar, Defendant was convicted of three counts of breaking and entering, and two counts of receiving stolen property. R.C. 2911.13(A) prohibits breaking and entering: "No person by force, stealth, or deception, shall trespass in an unoccupied structure, with the purpose to commit therein any theft offense * * * or any felony." A party is guilty of receiving stolen property when he receives, retains, or disposes of another's property when he knows, or reasonably should know, that the property was obtained by theft. R.C. 2913.51(A). One commits theft when, with the purpose to deprive the owner of property, he knowingly obtains or controls another's property without consent of the owner. R.C. 2913.02(A)(1). The crime of receiving stolen property is a fourth degree felony where the value of the items is between $5,000 and $100,000 and a felony of the fifth degree for a value between $500 and $5,000. R.C.2913.51(C).
 {¶ 7} The testimony in this case indicated that three establishments were broken into without permission from July 20 to July 28, 2003. Susan Hoaglund stated that a security camera captured a man breaking into the Canton Road Fuel Mart in Summit County. The videotape showed two men peering through the glass of the Fuel Mart after it was closed for the evening. Only one man, however, then broke the glass door of the store and took multiple boxes of lottery tickets off the counter.
 {¶ 8} Scott Faulconer testified that someone broke into Custom Auto Repair the night of July 25, 2003. He arrived at the store around 8 a.m. to discover broken windows, open toolboxes, and papers scattered throughout the office. After taking an inventory of items, he discovered a slew of missing equipment: air tools, drills, impacts, chisels, a diagnostic scanner, an air grinder for the compressor tank, an electric buffer, and a 1982 Oldsmobile Cutlass Supreme. The value of the tools alone equaled between $35,000 and $38,000.
 {¶ 9} Edward Mansour spoke about a similar incident which occurred a day later at Akron Auto Parts Service in Summit County. Mansour described the scene which greeted him that morning:
"[T]hey took and pried the desk upstairs, threw everything out, stole checks. Stole my tax papers. The register was broken up. And they stole the silver out of it. And they took the drawer and threw it back on the lavatory floor with all the pennies in it. And downstairs everything was just thrown about."
Mansour recalled that the garage door was open when he arrived, and indicated that the perpetrators must have entered through a skylight which was broken. After taking an inventory of the business, he discovered multiple missing tools, valued at $8,961.45, and two missing vehicles.
 {¶ 10} The police eventually arrested Michael Mollohan after discovering at least one of the stolen vehicles at the residence where he was staying with his aunt. While Mollohan was too impaired by drugs the evening of his arrest to talk to the police, he did eventually admit to breaking and entering into the three establishments, auto theft, and theft of various things at all three locations. Mollohan, however, insisted that he had not acted alone. He implicated Defendant in all three incidents.
 {¶ 11} As to the Fuel Mart, Mollohan stated that Defendant actually planned the theft of the lottery tickets, telling Mollohan the business had no camera or alarm. Mollohan indicated that Defendant drove him to the location in a stolen car, instructed him to break the door and take the lottery tickets, and then drove them both back to Defendant's father's home where they scratched off the lottery tickets. The two then went to various places early that morning to cash in the tickets before they could be reported as stolen. The police later found the stolen car with the empty lottery ticket dispenser near Defendant's home. The videotape of the theft showed two men peering in the glass prior to only one of them actually breaking the glass in the door. The faces on the videotape, however, were not clear enough to accomplish a positive identification of either man.
 {¶ 12} Mollohan also admitted to the theft at Custom Auto Repair. He stated that Defendant, again, picked him up and drove him to Custom Auto Repair. They parked in a neighboring lot, walked across the street, and broke the window with a brick. Both men entered the business where, according to Mollohan, Defendant sorted through the tools and equipment to decide what to steal, and Mollohan loaded those objects into the car. Mollohan indicated that they took a "carload of stuff" that was "[v]ery expensive" according to Defendant. Mollohan's fingerprints were found on shards of the glass. No fingerprints of Defendant were found, but Mollohan insisted that Defendant was always very careful to wear gloves.
 {¶ 13} The next morning, Defendant and Mollohan, accompanied by a man named Paul, went to another home to sell the stolen equipment and tools. They were paid approximately $200 for the tools. Mollohan stated that he and Defendant split the money and spent it on drugs.
 {¶ 14} Mollohan further admitted to the incident at Akron Auto Parts. He stated that he originally broke into the business by himself and stole a car. He then called Defendant to tell him what he had done, and Defendant told him "to come pick him up and we'll clean the spot out right." The two parked around the corner from the building, and entered through a bay window which Mollohan had left open. Similar to the Custom Auto Parts, Mollohan insisted that Defendant decided which equipment and tools to take while he loaded them into another car, which they also stole. They returned the next day to sell those tools to the same man where they had sold the Custom Auto Parts tools. They received $350.
 {¶ 15} Mollohan admitted that he was a convicted felon, and had pleaded guilty to multiple charges related to this case. He denied, however, that the prosecutor or police had promised him anything in return for his testimony. His willingness to testify against Defendant, he said, sprang from a desire to "[s]et the record straight, so [he] could get on with [his] life."
 {¶ 16} Two police detectives also testified at trial. Both generally verified the nature and extent of the break-ins, and further testified regarding their investigation of these incidents. Both detectives spoke about two men: Paul Mayfield and Mr. Ruble. Paul Mayfield told the detectives that he knew only Defendant and had connected Defendant with Mr. Ruble, the man to which Mollohan indicated he and Defendant sold all of the stolen tools and equipment. The detectives further located Mr. Ruble and recovered approximately $15,000 worth of the stolen tools and equipment from his garage. Ruble admitted to purchasing the items from some men who were introduced to him by Mayfield. He, however, denied knowing that the tools were stolen.
 {¶ 17} Detective Steve Snyder talked about the commonalities in the automotive thefts. Both involved businesses which were not completely cleaned out, but were, instead, carefully picked over, presumably by someone who knew the value of automotive tools. Both detectives further testified that their investigation revealed that Mollohan had no experience with automotive work and would not know which tools and equipment were expensive. Defendant, however, had worked in automotive shops, currently was helping with automotive body work, and would recognize the value of the various tools. This conformed to Mollohan's testimony that Defendant chose which tools to take, as Mollohan himself would not know the value of any of those items.
 {¶ 18} Detective Snyder also talked about the statements Defendant gave to him. Defendant denied involvement in any of the three break-ins. He told the detective that he knew Mollohan from prison, and that Mollohan had arrived at his residence late one morning with a box of scratched off lottery tickets. Defendant said that Mollohan requested his help to cash the tickets in that morning, and that he did not know the tickets were stolen. Defendant admitted to helping Mollohan cash in the tickets, telling the detective that Mollohan's appearing at his home with a box full of lottery tickets during the early hours of the morning did not seem unusual or suspicious.
 {¶ 19} As to the theft of the automotive tools, Defendant originally denied knowing anything about them, but eventually admitted to helping Mollohan sell the tools to Mr. Ruble. Defendant insisted, however, that he believed the tools had belonged to Mollohan's father or grandfather. Detective Snyder recalled that Defendant's statement continually changed in small ways depending upon what evidence the officer put before him.
 {¶ 20} After reviewing the evidence in the record before us, we cannot say that the convictions were against the manifest weight of the evidence. While Defendant insists that Mollohan's testimony is the only evidence which links him to these crimes, that simply is not the case. Mollohan's lack of knowledge related to the value of automotive tools, testimony from both detectives that the extent of these crimes required participation of more than one person, the video from Fuel Mart showing two men peering into the window, discovery of the stolen car with the lottery ticket dispenser only a few blocks from Defendant's residence, and the fact that Mayfield only knew Defendant, and not Mollohan, all support Mollohan's testimony. A finding that a conviction is supported by the weight of the evidence, also includes a finding of sufficiency of the evidence. Smith at ¶ 9, quoting State v.Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at 4. Accordingly, we overrule Defendant's first and second assignments of error.
 ASSIGNMENT OF ERROR III
"The trial court's sentence was contrary to law since it did not take into account fundamental sentencing principles, express sentencing criteria, or make findings pursuant to [R.C.2929.14(B)]."
 {¶ 21} In his third assignment of error, Defendant contends that the trial court failed to consider fundamental sentencing principles and make certain statutorily required findings related to imposition of more than minimum sentences. We disagree.
 {¶ 22} This court may remand a case for re-sentencing only if it clearly and convincingly finds that the trial court's findings are not supported by the record or that the sentence imposed is otherwise contrary to law. R.C. 2953.08(G); State v. Harrold,
9th Dist. No. 21797, 2004-Ohio-4450, at ¶ 13. Clear and convincing evidence is that "`which will produce * * * a firm belief or conviction as to the allegations sought to be established.'" State v. Eppinger (2001), 91 Ohio St.3d 158,164, quoting Cross v. Ledford (1954), 161 Ohio St. 469, 477. The trial court is required to make certain statutory findings orally on the record at the sentencing hearing. State v. Comer,99 Ohio St.3d 463, 2003-Ohio-4165, at ¶ 20, 26.
 {¶ 23} We first note that, while a court must consider the sentencing principles outlined in R.C. 2929.11(A), the court need not make any explicit findings related to those principles.State v. Holt, 9th Dist. No. 21835, 2004-Ohio-3252, at ¶ 20. Second, the facts at sentencing show that Defendant has served a prior term of incarceration. Where a defendant has served a prior prison term, R.C. 2929.14(B)(1) does not require a court to make any specific finding on the record regarding imposition of more than minimum sentences. State v. Pruiett, 9th Dist. No. 21796, 2004-Ohio-3256, at ¶ 28. Accordingly, the court did not need to make any express findings on the record related to the basic sentencing principles or imposition of more than minimum sentences. We overrule Defendant's third assignment of error.
 ASSIGNMENT OF ERROR IV
"Whether the trial court properly imposed non-mandatory consecutive sentences under [R.C. 2929.14]?"
 {¶ 24} In his final assignment of error, Defendant contends that the trial court failed to make the requisite findings regarding imposition of consecutive sentences. We find Defendant's assertions meritless.
 {¶ 25} When imposing consecutive sentences, the trial court must explicitly find on the record that consecutive sentences are "necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public[.]" R.C.2929.14(E)(4). R.C. 2929.14(E)(4) also requires a trial court to make one of three statutorily required findings regarding imposition of consecutive sentences including that:
"The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender." R.C. 2929.14(E)(4)(c).
The court must make these findings and give reasons for imposing consecutive sentences at the sentencing hearing.Comer, 99 Ohio St.3d 463, at paragraph one of the syllabus;State v. Riggs (Oct. 11, 2000), 9th Dist. No. 19846, at 3.
 {¶ 26} In this case, evidence at the sentencing hearing indicated that Defendant had prior convictions for: theft and breaking and entering in 1992; breaking and entering in 1993; aggravated trafficking and possession of drugs in 2000; breaking and entering and possession of criminal tools in 2000; and breaking and entering in 2002. In regard to imposition of consecutive sentences, the trial court stated:
"[The] Court finds that based on the record that there is a continuing course of conduct. Court finds involvement with another and the criminal history demonstrates that consecutive sentences are necessary to protect the public.
"[The] Court further finds that consecutive sentences are not disproportionate to the seriousness of the conduct and to the danger posed to the public and the likelihood of recidivism."
While the trial court did not explicitly use the exact words in the statute, it did make the required findings at the hearing. The court further supported those findings with remarks concerning Defendant's criminal history. As the trial court did make the required findings, we overrule Defendant's fourth assignment of error.
 {¶ 27} We overrule Defendant's assignments of error and affirm the judgment of the Summit County Court of Common Pleas.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Carr, P.J., Batchelder, J., concur.