OPINION
{¶ 1} Defendant-Appellant, Adam T. Trubee ("Trubee"), appeals the judgment and sentence of the Common Pleas Court of Marion County, Ohio, in which defendant pled guilty to one count of attempted burglary in violation of R.C. 2923.02.
 {¶ 2} On May 23, 2003 Marion County Sheriff's deputies arrested Trubee and two others for suspected burglaries of two residential homes. Witnesses reported that two individuals, identified as Trubee's co-defendants, Christopher Nagel and Nathan Laird, attempted to enter two separate residences through a window by pushing in the air conditioner unit. The two individuals fled the scene when they heard an occupant of one of the residences phone the police department. Police arrived on the scene, and the two subjects were apprehended in a vehicle driven by Trubee. The police found items reported missing from outside one of the residential properties in Trubee's vehicle.
 {¶ 3} On June 5, 2003 the Marion County Grand Jury indicted Trubee, Nagel, and Laird on two counts of burglary in violation of R.C.2911.12(A)(2) — (3). Trubee pled not guilty to both counts in the indictment. At a pre-trial hearing on September 11, 2003 the State of Ohio moved to amend the indictment from a charge of burglary to one of attempted burglary in violation of R.C. 2923.02. The State of Ohio also moved to dismiss Count II of the indictment. Trubee thereafter entered a plea of guilty to the amended Count I of the indictment.
 {¶ 4} Subsequent to the September 11, 2003 hearing but prior to sentencing, Trubee's counsel filed a written motion to withdraw his guilty plea pursuant to Crim.R. 32.1. The trial court held a hearing on September 19, 2003 and overruled the motion to withdraw guilty plea. The court subsequently sentenced Trubee to a term of two years in prison, filing its Judgment Entry of Sentencing on November 17, 2003.
 {¶ 5} Defendant now appeals from the decision of the trial court overruling his motion to withdraw guilty plea, and from the judgment and sentencing.
 I. Withdrawal of the Guilty Plea {¶ 6} Trubee asserts the following two assignments of error:
Defendant-Appellant was denied his Sixth Amendment right to effectiveassistance of counsel, by trial counsel's failure to thoroughlyinvestigate the case at bar prior to advising Defendant-Appellant toplead guilty.
 The Court below erred in overruling defense counsel's motion towithdraw plea when indications were apparent that the plea of guilty wasnot voluntarily made.
 {¶ 7} Generally, our review of a trial court's denial of a presentence motion to withdraw a guilty plea is limited to a determination of whether the trial court abused its discretion. State v. Peterseim (1979),68 Ohio App.2d 211, ¶ 2 of the syllabus. Although a motion to withdraw a guilty plea filed before sentencing "should be freely allowed," there is not an absolute right to withdraw a guilty plea prior to sentencing.State v. Xie (1992), 62 Ohio St.3d 521, 527, ¶ 1 of the syllabus,584 N.E.2d 715. It is within the discretion of the lower court and that decision should not be disturbed on review unless it is an abuse of discretion. Peterseim, 68 Ohio App.2d at ¶ 1 — 2 of the syllabus.
 {¶ 8} However, Trubee does not argue that the trial court should have accepted his motion to withdraw his guilty plea as a matter of right, but instead he asserts that the plea itself was invalid because it was not voluntarily, knowingly, and intelligently made. A guilty plea has serious consequences for a defendant, and therefore a trial court must not accept a plea unless it is voluntary, knowing, and intelligent. See State v.Ballard (1981), 66 Ohio St.2d 473, 423 N.E.2d 115. The voluntariness of a guilty plea can be determined only by considering all of the relevant circumstances surrounding it. Brady v. United States (1970), 397 U.S. 742. Furthermore, a defendant challenging a guilty plea on the basis that it was not voluntarily, knowingly, and intelligently made bears the burden of demonstrating a prejudicial effect. State v. Stewart (1977),51 Ohio St.2d 86, 93.
 {¶ 9} Defendant also argues that he was denied effective assistance of counsel in the trial court proceedings. However, the entry of a guilty plea is an admission of factual guilt, see Crim.R. 11(B)(1), and a criminal defendant who pleads guilty is limited on appeal to attacking the voluntary and intelligent nature of the plea. A criminal defendant who has entered a guilty plea "may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." State v. Spates (1992),64 Ohio St.3d 269, 272, 595 N.E.2d 351, quoting Tollett v. Henderson
(1973), 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235. Thus, by entering a guilty plea Trubee waived his right to bring a claim of ineffective assistance of counsel, except to claim that counsel's conduct affected the voluntary nature of the plea. Spates, 64 Ohio St.3d at 273; see State v. Tillman, 6th Dist. No H-02-004, 2004-Ohio-1967, ¶ 22, Statev. Towbridge, 6th Dist. No. L-02-1125, 2004-Ohio-481, at ¶ 26. Therefore, we need only determine whether Trubee's guilty plea was voluntarily, knowingly, and intelligently made.
 {¶ 10} Ohio Crim.R. 11(C)(2) outlines the procedures trial courts must follow for accepting guilty pleas in felony cases. Pursuant to that rule, before accepting a guilty plea to a felony charge, the trial court must first conduct a colloquy with the defendant to determine that he understands the plea he is entering and the rights he is voluntarily waiving by doing so. Crim.R. 11(C)(2); see also State v. Tucci, 7th Dist. No. 01 CA 234, 2002-Ohio-6903. A trial court must specifically inform a defendant that there are four rights a guilty plea waives: the rights to trial by jury, confrontation of witnesses, and to compel witnesses by compulsory process, as well as the privilege against self-incrimination. Boykin v. Alabama (1969), 395 U.S. 238; State v.Ballard (1981), 66 Ohio St.2d 473, 423 N.E.2d 115. The court must advise the defendant that a plea of guilty waives each of these rights. Id. at 479 — 81.
 {¶ 11} The record in the case clearly demonstrates that the trial court engaged in the colloquy required by Crim.R. 11 and advised Trubee of the rights he was waiving by pleading guilty to attempted burglary. At the September 19, 2003 hearing the court questioned Trubee to determine whether he understood the consequences of his plea and that he was waiving certain constitutional rights:
THE COURT: Have you had enough time to discuss this arrangement andthis potential plea of guilty with your attorney?
 THE DEFENDANT: Yes, sir.
 THE COURT: Do you have confidence in the advice you're being given?
 THE DEFENDANT: Yes, sir.
 THE COURT: Has your lawyer explained to you your constitutionalrights, the nature of the charges against you, and the consequences ofentering a plea of guilty?
 THE DEFENDANT: Yes, sir.
* * *
THE COURT: I'm sure your lawyer has explained to you that you don'thave to plead guilty here today. You're entitled to a speedy trial, andthat trial must be open to the public. You'd have a right to a jury of 12people, or you could waive a jury and have a trial to the court.
 If you'd have a jury trial, it would take the unanimous verdict of all12 jurors before you could be convicted.
 At a trial you and your attorney would have the right to see, hear, andconfront the witnesses who appear and testify against you. You'd alsohave the right to present evidence of your own, and the right to usecompulsory subpoena process to obtain the attendance of witnesses whowould testify on your behalf.
 You'd have the right to remain silent at your trial; the Prosecutorcould not comment upon your silence, and your silence could not beconsidered for any purpose. Of course if you wanted to you could take thewitness stand and testify on your own behalf, in which case theProsecutor would have an opportunity to cross-examine you.
 Under our system of laws you're presumed to be innocent until such timeas you're proven guilty beyond a reasonable doubt. What that means isthat it is incumbent upon the Prosecutor to go forward and prove each andevery essential element of the crime with which you're charged.
The court also discussed the nature of the charges and the potential punishments Trubee would be susceptible to if he pled guilty. Therefore, the record establishes that Trubee was made aware of the constitutional rights he was waiving by pleading guilty, and he acknowledged the voluntary nature of his plea.
 {¶ 12} Trubee asserts that his plea was not voluntary because he was coerced into pleading guilty by the actions of his counsel. Specifically, Trubee argues that he only agreed to plead guilty because his counsel "scared" him by telling him that if he did not accept the negotiated plea he would be "looking at serious, worse things." He argues that his counsel also told him his co-defendants would testify against him at trial even though there was no indication in the State's summation of the facts that would indicate that the co-defendants would testify.
 {¶ 13} These alleged actions by defense counsel, even if taken, did not affect the voluntary nature of the Trubee's plea in this case. It is clear that had Trubee not agreed to plead guilty he was facing charges of burglary, conviction of which carries harsher punishment than his plea of guilty to attempted burglary. Thus, it is clearly appropriate for defense counsel to advise his client that he will be facing stiffer penalties if he does not plead guilty and is convicted of burglary.
 {¶ 14} Moreover, Trubee indicated at the hearing that he was confident in the advice given to him by trial counsel, and that he was entering his plea without any coercing:
THE COURT: Now, other than the Prosecutor's recommendation, have therebeen any promises, threats, or inducements to get you to plead guiltyhere today?
 THE DEFENDANT: No, sir.
 THE COURT: Are you doing this voluntarily?
 THE DEFENDANT: Yes, Your Honor.
In short, Trubee made it clear before the trial court that he had accepted the advice of counsel, was confident in that advice, and had voluntarily chosen to plead guilty to the reduced charge. Nothing in counsel's conduct indicates that Trubee was improperly coerced or pressured into pleading guilty.
 {¶ 15} As discussed previously, we find that defendant's guilty plea was made voluntarily, knowingly, and intelligently. We therefore also find that counsel's conduct did not affect the voluntary nature of the plea. Based on the foregoing, defendant's first and second assignments of error are overruled.
 II. Application of Blakely v. Washington {¶ 16} We next address the additional arguments raised in Trubee's pro se supplemental brief. Trubee challenges the constitutionality of his sentence, arguing that he was given a sentence above the statutorily prescribed maximum based on information that was not submitted to a jury and proved beyond a reasonable doubt. Trubee directs us to the recent United States Supreme Court decision in Blakely v. Washington (2004), ___ U.S. ___, 124 S.Ct. 2531, in which the Court found the State of Washington's sentencing scheme unconstitutional.
 {¶ 17} In Blakely, the Court expounded on the rule announced inApprendi that "[o]ther than the fact of prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt."Apprendi v. New Jersey (2000), 530 U.S. 466, 490. Blakely was charged with first-degree kidnapping, but reached a plea agreement whereby the charge was reduced to second-degree kidnapping involving domestic violence and use of a firearm, a "class B" felony. Blakely,124 S.Ct. at 2534. The Washington sentencing scheme provided that all class B felonies were susceptible to prison terms of up to ten years.
 {¶ 18} However, the United States Supreme Court found that the ten year maximum for class B felonies was not the "statutory maximum" for purposes of the Apprendi rule. Notwithstanding the ten year maximum penalty, the Washington sentencing scheme further limited the potential prison term for second-degree kidnapping with a firearm to a "standard range" of between forty-nine and fifty-three months. Blakely,124 S.Ct. at 2535. Moreover, a judge could only impose a sentence beyond the standard range after making a finding on the record that there are "substantial and compelling reasons justifying an exceptional sentence." Id., quoting Wash.Rev. Code Ann. 9.94A.310(3)(b).
 {¶ 19} Applying the Apprendi rule, the Court held that the "statutory maximum" in the sentencing scheme was fifty-three months, rather than ten years, because that was the maximum sentence the judge could impose "solely on the basis of the facts reflected in the jury verdict oradmitted by the defendant." Blakely, 124 S.Ct. at 2537, citing Ring v.Arizona (2002), 536 U.S. 584, 602. A sentence imposed based on facts not before the jury or admitted by the defendant violated defendant's "federal constitutional right to have a jury determine beyond a reasonable doubt all facts legally essential to his sentence." Blakely,124 S.Ct. at 2536 (emphasis added). The sentence imposed by the trial judge — seven and a half years — was impermissible because it required a finding of "deliberate cruelty," a finding that was not made by the jury under the statutory scheme.
 {¶ 20} In one sense, the Ohio sentencing scheme applicable in this case is similar in function to the scheme found unconstitutional inBlakely. Trubee pled guilty to attempted burglary, a third degree felony. R.C. 2911.12(C); R.C. 2923.02. Under R.C. 2929.14(A)(3), a person guilty of a third degree felony is susceptible to a prison sentence between one and five years. However, a sentencing court is limited by the provisions in section (B):
[T]he court shall impose the shortest prison term authorized for theoffense pursuant to division (A) of this section, unless one or more ofthe following applies:
 (1) The offender was serving a prison term at the time of the offense,or the offender previously had served a prison term.
 (2) The court finds on the record that the shortest prison term willdemean the seriousness of the offender's conduct or will not adequatelyprotect the public from future crime by the offender or others.
R.C. 2929.14(B). Trubee argues that under the general rule announced inBlakely and Apprendi the factors listed in R.C. 2929.14(B)(1) — (2) must be submitted to a jury and proved beyond a reasonable doubt. He interprets R.C. 2929.14(B)'s requirement that the trial court sentence a defendant to the "shortest prison term authorized for the offense" as being the functional equivalent of creating a "standard range" of the type seen in the Washington statute. Following the Blakely Court's analysis, he argues that the "shortest prison term authorized for the offense," in this case one year, is the "statutory maximum" because any sentence beyond that term requires additional factual determinations by the court. He therefore urges this court to hold that Ohio's felony sentencing scheme is unconstitutional under Blakely. We decline to do so.
 {¶ 21} We hold that Trubee's sentence does not violate his Sixth Amendment rights. Our analysis of the constitutionality of Ohio's sentencing scheme is informed by the Apprendi decision and its progeny, as well as the Supreme Court's post-Blakely evaluation of the Federal Sentencing Guidelines in United States v. Booker (2005), ___ U.S. ___,125 S.Ct. 738. In order to address the constitutionality of the sentence imposed in this case under the Ohio statutory framework, we must conduct a two-pronged analysis. First, does R.C. 2929.14(B) authorize a court to impose a sentence beyond the "statutory maximum?" Second, do the judicial sentencing determinations in this case fit within a recognized exception to the Blakely-Apprendi rule?
 1. R.C. 2929.14(B) Does Not Create a Separate Maximum Sentence as Defined in Blakely. A. The Statutory Scheme Contains Only One Range of Penalties. {¶ 22} The first question we must address is whether R.C. 2929.14(B)'s requirement that a trial court impose the "shortest prison term authorized for the offense" creates a "statutory maximum" as defined inBlakely.
 {¶ 23} Unlike the Washington statute, the sentencing "range" created by R.C. 2929.14(B) is not "the maximum sentence a judge may impose solelyon the basis of the facts reflected in the jury verdict or admitted bythe defendant." Blakely, 124 S.Ct. at 2537. Rather, it limits a defendant's potential sentence within the statutory range created by R.C. 2929.14(A). Put simply, the facts reflected in a jury verdict convicting a defendant of a third degree felony allow a sentence of up to five years. R.C. 2929.14(B) merely limits judicial discretion in sentencing within that range.
 {¶ 24} A close examination of the Supreme Court's rulings demonstrates that the Court has implicitly found that the structure of Ohio's sentencing scheme does not violate a defendant's constitutional rights. In her dissenting opinion in Apprendi, Justice O'Connor criticized the majority by arguing that New Jersey could achieve the same sentencing result without violating the Court's rule simply by redrafting the statute:
First, New Jersey could prescribe, in the weapons possession statute itself, a range of 5 to 20 years' imprisonment for one who commits that criminal offense. Second, New Jersey could provide that only those defendants convicted under the statute who are found by a judge . . . to have acted with a purpose to intimidate an individual on the basis of race may receive a sentence greater than 10 years' imprisonment.
Apprendi, 530 U.S. at 540 (O'Connor, J., dissenting).
 {¶ 25} Moreover, the Apprendi majority accepted that such a scheme would be constitutional under their new rule. Id. at 489 n. 16 (noting that a State could "comply with the rule" by revising the criminal code in the manner O'Connor suggests). This suggests that "in the Court's view there are constitutionally significant differences between [O'Connor's suggested framework] and the actual Apprendi statute." Michaels, Truth in Convicting: Understanding and Evaluating Apprendi (2000), 12 Fed.Sent.R. 320, 321.[1] These constitutional differences permit a legislature to enable judicial fact-finding within a statutory range.
 {¶ 26} This statutory structure is virtually identical to Ohio's framework — R.C. 2929.14(A) sets a sentencing range for each felony degree, and R.C. 2929.14(B) requires a court to make a specific finding before the defendant can receive a sentence beyond the lowest term in that range. Following Justice O'Connor's analysis, as accepted by theApprendi majority, this statutory structure fits within Apprendi's constitutional rule.
 {¶ 27} The Ohio and Washington statutory schemes also differ in where the authority to impose the maximum sentence derives from. TheBlakely-Apprendi rule establishes that the ultimate authority to impose the maximum sentence must stem from the jury verdict itself, and not from an additional fact determined by the sentencing court. The constitutional right protected by the Blakely-Apprendi rule — the defendant's Sixth Amendment right to a trial by jury — required a rule that "ensur[ed] that the judge's authority to sentence derives wholly from the jury's verdict." Blakely, 124 S.Ct. at 2538 — 39.
 {¶ 28} Thus, the Blakely definition of the "statutory maximum" establishes that the verdict itself, not the additional findings of the court, must grant authority for the sentence. This was not the case under the Washington system, because the sentence permitted after the additional findings was beyond the maximum sentence a jury verdict of second degree kidnapping allowed. Thus, Blakely was not afforded his jury trial rights because the "substantial and compelling reasons" permitting an increase in his sentence were never considered by a jury.
 {¶ 29} More precisely, those reasons necessarily were not incorporated into the maximum sentence permitted by the jury verdict, because "[a] reason offered to justify an exceptional sentence can be considered only if it takes into account factors other than those which are used in computing the standard range sentence for the offense." State v. Gore
(2001), 143 Wash.2d 288, 315 — 16, 21 P.3d 262, 277. Therefore, a Washington court could not impose the higher sentence unless it considered factors that were unnecessary to the jury decision to convict the defendant of a specific offense. As a result, the Washington scheme essentially allowed the court to sentence Blakely as if he had committed a first-degree felony, although he specifically pled guilty to second-degree kidnapping, a reduced charge. Id. at 2539. It was this aspect of the sentencing scheme that violated Blakely's constitutional rights because it permitted him to be sentenced beyond what the "jury verdict" allowed. Blakely, 124 S.Ct. at 2537 ("When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts `which the law makes essential to the punishment,' and the judge exceeds his proper authority.").
 {¶ 30} However, the Supreme Court's opinions have repeatedly made clear that "when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant [to the sentence]." Booker, 125 S.Ct. at 750 (emphasis added).
[N]othing [in this opinion] suggests that it is impermissible for judges to exercise discretion — taking into consideration various factors relating both to offense and offender — in imposing a judgment within therange proscribed by statute. We have often noted that judges in this country have long exercised discretion of this nature in imposing sentence within statutory limits in the individual case."
Apprendi, 530 U.S. at 481 (citations omitted). So long as the permissible sentences are within the range prescribed by statute, the defendant's jury trial rights are not violated because the defendant has the right to have every factor that goes into consideration when imposingthe maximum sentence put before the jury. The maximum potential punishment for each felony degree remains unchanged, regardless of the judicial findings.
 {¶ 31} The Ohio statute does not grant the sentencing court any authority to impose a sentence above that available for all other offenses of the same type. Therefore, Trubee was entitled under the sentencing scheme to have a jury determine all facts that would prove him guilty of attempted burglary, and he was never amenable to a sentence beyond what is statutorily prescribed for all attempted burglaries. The Ohio system does not allow a court to utilize facts not contemplated when establishing the sentencing range in order to impose a sentence beyond that range. Consequently, the court was not authorized to make any factual findings that would have permitted sentencing Trubee to six, seven, or eight years imprisonment, a punishment reserved only for first or second degree felonies. See R.C. 2929.14(A)(1) — (2).
 {¶ 32} It is also important to note the nature of the constitutional right at issue. The right to a jury trial cannot be analyzed in a vacuum because it implicates various other constitutional protections — the presumption of innocence, "the proscription of any deprivation of liberty without `due process of law,'" the right to a speedy and public trial, and the right to have the jury verdict based on proof beyond a reasonable doubt. Apprendi, 530 U.S. at 477 — 78. To ensure all of these protections, the Constitution provides a "fundamental reservation of power" to the jury, which limits judicial power "to the extent that the claimed judicial power infringes on the province of the jury." Blakely,124 S.Ct. at 2540. Thus, Justice Scalia notes in Blakely that indeterminate sentencing is permissible because it does not increase judicial discretion "at the expense of the jury's traditional function of finding the facts essential to lawful imposition of the penalty." Id.
 {¶ 33} Based on this understanding of the nature of the jury trial right, the Court concluded in Blakely that in the Washington statutory scheme the jury did not find all facts essential to the punishment. Id. at 2537. This was because "the relevant `statutory maximum' is . . . the maximum [a judge] may impose without any additional findings." Id. Unlike the Washington scheme, R.C. 2929.14(B) does not permit a trial court to impose any sentence above that permitted by R.C. 2929.14(A).
 B.R.C. 2929.14(B) Does Not Mandate an Increase in the Sentence Based Upon Additional Judicial Findings {¶ 34} In addition, it is our conclusion that Ohio's statutory scheme does not violate Blakely because the sentencing determinations made by the trial court under subsection (B) are not "legally essential to the punishment." See Blakely, 125 S.Ct. at 2536. There is no one statutory finding permitting a particular increase in the sentence, and the Ohio statute does not mandate any increase in the sentence based upon additional judicial findings. This is markedly different from the statutes in Blakely and Booker, which mandated a specific increase in the sentence based on a specific finding.
 {¶ 35} R.C. 2929.14(B) requires that the court "impose the shortest prison term authorized for the offense . . . unless [one of the judicial determinations applies]." R.C. 2929.14(B). However, the plain language of the statute provides only that the court impose the minimum term available, it does not require an increase if the additional findings are made. This distinction is significant and is consistent with the Supreme Court's analysis in Booker, where the Court found that the statutory provisions making the Federal Sentencing Guidelines mandatory were unconstitutional. Booker, 125 S.Ct. at 750 ("Indeed, everyone agrees that the constitutional issues presented by these cases would have been avoided entirely if Congress had omitted from the SRA the provisions that make the Guidelines binding on district judges. . . .").
 {¶ 36} In reality, all R.C. 2929.14(B) does is mandate a minimum sentence unless the trial court determines that the offender deserves a higher prison sentence within the range permissible for that crime. It then limits the ways the court can determine that the higher punishment is necessary. In this way, R.C. 2929.14 creates an indefinite sentencing scheme, but limits judicial discretion within that scheme. It does not, however, allow judicial discretion to interfere with the province of power reserved to the jury. Put another way, it does not allow the judge to usurp the jury's power by engaging in any factual determinations that set the available range of sentences apart from the range already provided in the statute.
 {¶ 37} Instead, R.C. 2929.14(B) operates to ensure that defendants who are convicted of or plead guilty to felonies of a certain degree receive a prison sentence consistent with their individual actions. It limits the trial court's ability to impose harsher sentences to only those defendants who have committed the worst forms of the particular offense or are likely to commit future crimes — it does nothing to change the nature of the offense itself, unlike the Washington scheme. For example, Trubee could never have been punished as if he had committed a felony of a greater degree.
 {¶ 38} Accordingly, the "statutory maximum" under R.C. 2929.14 is the highest prison term permitted by section (A) under the Blakely-Apprendi
definition. The jury trial rights of the defendant are not violated because the verdict or plea itself permits this maximum punishment.
 2. The Sentence in This Case Falls Within The Blakely Exceptions For Prior Criminal Convictions {¶ 39} Even assuming arguendo that R.C. 2929.14(B) did establish the shortest prison term as the "statutory maximum" pursuant to theBlakely-Apprendi rule, the sentence in this case still does not violate Trubee's constitutional rights because the trial court relied on Trubee's past criminal history in sentencing him above the "shortest prison term authorized for the offense." There is an exception to the general rule announced in Apprendi and reaffirmed in Blakely; a defendant's prior convictions need not be submitted to the jury and proved beyond a reasonable doubt. See Apprendi, 530 U.S. at 490. This exception for prior convictions was first recognized by the Court in Almendarez-Torres v.United States (1998), 523 U.S. 224, and was specifically articulated inApprendi. Apprendi, 530 U.S. at 490.[2]
 {¶ 40} There are two reasons articulated by the Court justifying the exclusion of prior convictions from the general rule. First, theApprendi Court relied on the fact that procedural safeguards were already in place to justify the exception. Apprendi, 530 U.S. at 488. Put simply, to receive the prior conviction the offender must have received the right to a jury trial and the right to have all elements of his offense proven beyond a reasonable doubt. Jones v. United States (1999),526 U.S. 227, 249. As the Apprendi Court explained, "the certainty that procedural safeguards attached to any `fact' of prior conviction . . . mitigated the due process and Sixth Amendment concerns otherwise implicated in allowing a judge to determine a `fact' increasing punishment beyond the maximum of the statutory range."[3] Id.
 {¶ 41} The Court has also recognized the exception for prior convictions because the sole issue addressed by this factor is recidivism. Almendarez-Torres, 523 U.S. at 243-44. In Almendarez-Torres,
the Court held that the fact of prior conviction was not an element of an aggravated recidivist offense, and therefore did not need to be included in an indictment charging that offense. Id. at 247. The statute at issue authorized imprisonment of no more than two years if a deported person re-enters the United States. However, if the deportation was subsequent to a conviction for an aggravated felony, the offender was subject to an increased prison term of up to twenty years. The Court found that the fact of prior conviction was not an element of the offense. Id.
 {¶ 42} The Court distinguished the fact of prior conviction from facts relating to the underlying circumstances of the offense. Id. at 243 — 44, citing Graham v. West Virginia (1912), 224 U.S. 616, 629. A prior conviction does not relate to the offender's guilt or innocence, and therefore it need not be submitted to the jury. Id. Rather, the existence of a prior conviction touches upon the likelihood that the offender will commit future crimes, a traditional justification for punishment.[4]
Id. The Court concluded that the "fact" of prior conviction relates only to punishment, and therefore is traditionally considered a "sentencing factor" and not an element of the offense. Id.
 {¶ 43} The Court has not retreated from that reasoning in subsequent cases. See United States v. Koch (6th Cir. 2004), 383 F.3d 436, 442
(examining the long-held distinction between "sentencing factors" and "elements" of the offense). Although the Court noted that this distinction was never contemplated at the time of the Nation's founding,Apprendi, 530 U.S. at 478, the discussion in that case centered on facts relating to the circumstances of the crime, specifically, whether it was a "hate crime." Id. at 468 — 69. In Blakely, too, the sentence enhancement was based on facts pertaining to the commission of the offense: whether the offender acted with "deliberate cruelty." Blakely,124 S.Ct. at 2536. In that context, any distinction between sentencing factors and elements of the offense is immaterial; so long as the fact pertains to the commission of the offense the Apprendi and Blakely rules require jury fact-finding.
 {¶ 44} Interestingly, however, an examination of factors unrelated to the commission of the offense is conspicuously absent from of theApprendi/Blakely discussion. In fact, the Almendarez-Torres case, which recognized the recidivism exception, is not even mentioned in Justice Scalia's majority opinion in Blakely. On the other hand, the Court specifically drew a distinction between the types of facts relating to recidivism in Almendarez-Torres — those not related to the commission of the offense — and the types of facts that are "elements" of the offense.Jones, 526 U.S. at 248 — 49. In Jones, the Court states: "It is not, of course, that anyone today would claim that every fact with a bearing on sentencing must be found by a jury; we have resolved that general issue and have no intention of questioning its resolution." Id. at 248 (emphasis added). "The Court's repeated emphasis on the distinctive significance of recidivism leaves no question that the Court regarded that fact as potentially distinguishable for constitutional purposes from other facts that might extend the range of possible sentencing." Id at 249. Although the "distinctive significance" of factors, like recidivism, that are unrelated to the commission of the offense has not been addressed by the Court since Almendarez-Torres, its reasoning still applies.
 {¶ 45} Consequently, we think this case falls under the recognized exception for prior convictions. In sentencing Trubee, the trial court relied on the fact that Trubee had a previous record. At the sentencing hearing, the court made a finding on the record that Trubee had a "very lengthy" juvenile history and had been incarcerated for burglary in Arizona. In its journal entry, the trial court noted that the shortest prison term would not adequately protect the public from future crimes.
Recidivism was the sole factor influencing the trial court's decision to sentence Trubee beyond the one year minimum sentence. Under the Supreme Court's rationale in Almendarez-Torres, this fact, which was unrelated to the commission of the offense, need not be reserved to the jury. TheBlakely rationale is inapplicable.
 {¶ 46} Moreover, the court's finding that Trubee had served a prior prison term takes R.C. 2929.14(B) out of the Blakely arena. Under the statute, once a court determines that a defendant has served a prior prison sentence the defendant is susceptible to any prison term within the range proscribed for that degree of felony — the statute no longer requires the court to impose the "shortest prison term authorized for the offense." In order to permit the court to impose more than the minimum, the statute only requires that either subsection (1) or (2) applies; no judicial fact-finding is needed. R.C. 2929.14(B)(1) — (2); see also Statev. Pruiett, 9th Dist. No. 21796, 2004-Ohio-3526, at ¶ 28 ("[A]ny language relating to `a finding', `finds', or `on the record', is blatantly absent from R.C. 2929.14(B)(1)."), State v. Dolinar, 9th Dist. No. Civ.A. 21995, 2004-Ohio-6737, at ¶ 23, citing Pruiett at ¶ 28,State v. Sanders, 11th Dist. No. 2003-L-144, 2004-Ohio-5937, at ¶17-19. Thus, the court is not required to make any factual findings to increase the sentence, and the Blakely rule no longer applies to the statute. Accordingly, the trial court did not violate Trubee's Apprendi
rights.
 {¶ 47} Trubee also argues that his sentence is unconstitutional because the trial court considered a victim impact statement and a presentence report before issuing its sentence. Trubee, relying once again on Apprendi and Blakely, argues that the trial court cannot use such evidence to sentence a defendant above the statutory maximum.
 {¶ 48} However, it is clear Ohio's statutory scheme does not allow the judge to sentence a defendant beyond the statutory maximum based on information contained in victim impact statement or a presentence report. Under the express language of the statute, the trial judge could only sentence Trubee to more than one year in prison if he found one of the factors listed in R.C. 2929.14(B). In short, Blakely did not hold that information contained in a victim impact statement or a presentence report could not be used to assist the trial judge in sentencing a defendant within the statutory range.
 {¶ 49} Finally, Trubee challenges the validity of his sentence, arguing that it is not valid because the court's findings were not journalized. As previously stated, the journal entry stated, "[t]he court finds that the shortest prison term would not adequately protect the public from future crime by the defendant or others." Implicit in this finding is the recidivism issue, and it is clear that the trial court based this finding on Trubee's prior burglary convictions and lengthy juvenile record. Thus, defendant's arguments are not well taken.
 {¶ 50} We think it clear that the trial court in this case issued its sentence based on Trubee's prior convictions, and thus it was within the trial court's discretion to sentence Trubee within the range permitted by the burglary statute.
 III. Conclusion {¶ 51} We hold the trial court did not abuse its discretion in denying Trubee's motion to withdraw his guilty plea, and therefore Trubee's first and second assignments of error are overruled. Additionally, based on the foregoing analysis we hold that R.C. 2929.14(B) does not establish the "shortest prison term authorized for the offense" as the statutory maximum under Blakely. The statute does not increase the maximum penalty to which a defendant is susceptible due to factual findings by a trial judge, and the statute does not mandate an increase in the sentence based on any judicial determinations. Moreover, the determinations relied on by the trial court to increase Trubee's sentence pursuant to R.C. 2929.14(B) were based on his past criminal convictions, and therefore were exempt from the Blakely-Apprendi rule. Accordingly, the assignments of error raised by Trubee's pro se brief are overruled, and the judgment and sentence of the trial court is affirmed.
Judgment Affirmed.
 IV. Certification for Conflict
Furthermore, on the issue as to whether the decision of the United States Supreme Court in Blakely v. Washington (2004), 124 S.Ct. 2531, renders Ohio's sentencing scheme unconstitutional, we sua sponte certify this decision pursuant to App.R. 25 to the Ohio Supreme Court for conflict with the recent decision of the First District Court of Appeals in State v. Bruce, 1st Dist. No. C-040421, 2005-Ohio-373.
Cupp, P.J., and Bryant, J., concur.
[1] Prof. Michaels defines the "Revised Penalty Statute" as follows: "New Jersey could . . . revis[e] the statutory penalty for second-degree offenses to five to twenty years, while enacting a separate provision that forbids the judge from imposing a sentence of more than ten years unless the judge finds that the defendant committed the offense with a biased purpose." Michaels, supra at 320.
[2] The Blakely decision outlines a second exception to the general rule: a criminal defendant can waive his Apprendi rights. "When a defendant pleads guilty, the State is free to seek judicial sentence enhancements so long as the defendant either stipulates to the relevant facts or consents to judicial factfinding." Blakely, 124 S.Ct. at 2541, citing Apprendi, 530 U.S. at 488. A defendant can always consent to judicial factfinding, whether concurrently with a guilty plea or subsequent to a jury trial. Id. "[J]udicial factfinding as to sentence enhancements . . . may well be in his interest if relevant evidence would prejudice him at trial." Id. Thus, if a defendant consents to judicial factfinding, he waives his right to have any factor which increases his sentence over the statutory maximum found beyond a reasonable doubt by a jury.
However, based on our finding that Blakely is inapplicable to Ohio's statutory scheme, this exception will not be implicated in Ohio. When a criminal defendant pleads guilty to the underlying charges, that defendant is admitting all facts essential to the maximum punishment. Therefore, the defendant need not consent to any judicial factfinding, because there is no factor that can increase his sentence over the statutory maximum.
[3] There has been disagreement with the Court's reliance on these procedural safeguards to justify the Almendarez-Torres exception. SeeUnited States v. Jackson (2nd Cir. 2004), 368 F.3d 59, n. 9.
[4] Indeed, protecting the public from future crime by the offender is one of the two overriding principles of felony sentencing in Ohio. R.C.2929.11(A).