DECISION AND JOURNAL ENTRY
{¶ 1} Defendant-Appellant, Brandon K. Shawhan, appeals from his convictions in the Summit County Court of Common Pleas. This Court affirms.
 I {¶ 2} On April 10, 2007, Shawhan was arrested on suspicion of breaking and entering into several stores at the Rolling Acres Mall ("Rolling Acres") and taking merchandise from those stores. Police suspected that Shawhan had been living in the vacant Diamond's Men's Warehouse ("Diamond's") store of Rolling Acres and had stolen merchandise from J.C. Penney's, GNC, and Stockade at night while the mall was closed. When officers searched Diamond's, they found much of the stolen merchandise as well as several of Shawhan's personal items.
 {¶ 3} On April 24, 2007, the grand jury indicted Shawhan on four counts of breaking and entering, in violation of R.C. 2911.13(A), and three counts of receiving stolen property, in *Page 2 
violation of R.C. 2912.51(A). The matter proceeded to a jury trial on April 15, 2008. The jury found Shawhan: (1) guilty on the first three counts of breaking and entering; (2) guilty of the lesser-included offense of criminal trespassing on the remaining count of breaking and entering; and (3) guilty on all three counts of receiving stolen property, with the value of the property being $500 or more and less than $5,000. The trial court sentenced Shawhan to a total of twelve months in prison.
 {¶ 4} Shawhan now appeals from the trial court's judgment and raises three assignment of error for our review. For ease of analysis, this Court rearranges and consolidates some of the assignments of error.
 II Assignment of Error Number Two "THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR ACQUITTAL AS TO THE CHARGE."
 Assignment of Error Number Three "APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 5} In his second and third assignments of error, Shawhan argues that his convictions for breaking and entering, criminal trespass, and receiving stolen property are based on insufficient evidence and are against the manifest weight of the evidence. We disagree.
 {¶ 6} A review of the sufficiency of the evidence and a review of the manifest weight of the evidence are separate and legally distinct determinations. State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at *1. "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." Id., citing State v. Thompkins (1997), *Page 3 78 Ohio St.3d 380, 390 (Cook, J., concurring). In order to determine whether the evidence before the trial court was sufficient to sustain a conviction, this Court must review the evidence in a light most favorable to the prosecution. State v. Jenks (1991), 61 Ohio St.3d 259, 274. Furthermore:
 "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. at paragraph two of the syllabus; see, also, Thompkins, 78 Ohio St.3d at 386.
In State v. Roberts, this Court explained:
 "[Sufficiency is required to take a case to the jury[.] *** Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted.) State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at *2.
Accordingly, we address Shawhan's challenge to the weight of the evidence first, as it is dispositive of his claim of sufficiency.
 {¶ 7} In determining whether a conviction is against the manifest weight of the evidence an appellate court:
 "[M]ust review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
A weight of the evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than supports the other. Thompkins, 78 Ohio St.3d at 387. Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. Id. Therefore, this Court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily *Page 4 
against the conviction." State v. Martin (1983), 20 Ohio App.3d 172,175; see, also, Otten, 33 Ohio App.3d at 340.
 {¶ 8} R.C. 2911.13(A) provides that "[n]o person by force, stealth, or deception, shall trespass in an unoccupied structure, with purpose to commit therein any theft offense, as defined in [R.C. 2913.01], or any felony." Although the Revised Code does not define the phrase "unoccupied structure," a court may look to R.C. 2909.01's definition of the phrase "occupied structure" for guidance in determining whether a structure constitutes an "unoccupied structure" for purposes of the breaking and entering statute, R.C. 2911.13. State v. Carroll (1980), 62 Ohio St.2d 313, 314-15. The Revised Code provides that:
 "(C) `Occupied structure' means any house, building, *** or other structure, *** or any portion thereof, to which any of the following applies:
 "***
 "(4) At the time, any person is present or likely to be present in it." R.C. 2909.01(C)(4).
The offense of receiving stolen property constitutes a "theft offense" for purposes of the breaking and entering statute. R.C. 2913.01(K)(1); R.C. 2911.13(A).
 {¶ 9} In defining the offense of receiving stolen property, R.C. 2913.51(A) provides that "[n]o person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense." "One commits theft when, with the purpose to deprive the owner of property, he knowingly obtains or controls another's property without consent of the owner." State v. Dolinar, 9th Dist. No. 21995,2004-Ohio-6737, at ¶ 6, citing R.C. 2913.02(A)(1). The crime of receiving stolen property is a fifth-degree felony when the value of the stolen items is $500 or more and less than $5,000. R.C. 2913.51(C). *Page 5 
 {¶ 10} In defining the offense of criminal trespass, R.C. 2911.21(A)(1) provides that "[n]o person, without privilege to do so, shall *** [k]nowingly enter or remain on the land or premises of another." "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).
 {¶ 11} Officer Greg Mesko testified that he and several other officers responded to a call at Rolling Acres on March 27, 2007. Officer Mesko testified that officers discovered Shawhan hiding behind a false wall that used to house the mall's Ticketmaster booth. Once officers obtained Shawhan's information, they released him because Rolling Acres' management wanted him removed from the property. Officer Mesko testified that the false wall in which Shawhan had been hiding abutted the entrance to Diamond's.
 {¶ 12} Officer Lauri Natko testified that, on April 9, 2007, she responded to a breaking and entering call at Stockade, a store in Rolling Acres. Officer Natko testified that Stockade's manager informed her that someone had entered the store through its rear door sometime during the evening and had taken several items. As Officer Natko investigated the store, she noticed that drawers had been replaced after items had been removed and that items had been taken "specifically out of certain areas of the store." According to Officer Natko, whoever had broken into the store had taken his time in looking through items because the store's merchandise had not been "thrown around." Officer Natko also testified as to the specific items that were stolen from Stockade.
 {¶ 13} Officer Natko also responded to another breaking and entering call at the GNC store in Rolling Acres on April 10, 2007. Officer Natko and GNC's manager determined that *Page 6 
someone had broken into the store through its rear, interior entrance. According to Officer Natko, the location of the door allowed her to determine that the person who had broken into the store "had to be inside the mall after the mall closed." Officer Natko then exited through the door and into the mall's back corridor to which only store employees had access. On the ground in the back corridor, she discovered a CD player plugged into an outlet and charging. Officer Natko testified that she reported her findings to her sergeant and went back on duty.
 {¶ 14} Officer Natko testified that approximately half an hour later she responded back to Rolling Acres along with several other officers based on a call that a male suspect had been found inside one of the mall's stores. Although the suspect managed to flee before officers arrived, Officer Natko testified that the officers performed an interior search of the mall. One of the vacant stores that the officers searched was Diamond's, whose rear door opened into the same back corridor in which Officer Natko found the CD player charging. Upon searching Diamond's, officers discovered that it appeared that someone had been living in the vacant store. Officers found a mattress, blankets, pillows, empty food wrappers, CDs, magazines, and a bucket that had been "us[ed] as a bathroom." Officers also found many items that matched the description of the merchandise taken from Stockade and GNC and several personal items, including a receipt from Plato's Closet with Shawhan's name on it, a receipt from Subway with Shawhan's name on it, and a receipt from the Bureau of Motor Vehicles with Shawhan's name on it. Finally, Officer Adam Clark testified that officers found a fingerprint on one of the GNC protein shakes that they found strewn about Diamond's and matched the fingerprint to Shawhan.
 {¶ 15} Officers Shea Flaherty confirmed Officer Natko's testimony that it appeared that someone had been living in Diamond's. Officer Flaherty testified that Diamond's windows had been covered up so that one could not see inside of the store from the mall. Officer Flaherty *Page 7 
further testified that in addition to merchandise from Stockade and GNC, officers found approximately $28,000 worth of flat screened televisions and portable DVD players in the back of the store. Officers determined that the televisions and DVD players had been taken from JC Penney's. Officer Flaherty testified that the value of the items taken from GNC amounted to over $700. Officer Ronald Garey, another officer on scene, testified that the value of the items taken from Stockade amounted to $1,172.
 {¶ 16} Timothy Feorene, the former senior loss prevention manager for the J.C. Penney's at Rolling Acres, testified the televisions and DVD players that police found in Diamond's were stolen from J.C. Penney's exterior stockroom. Feorene testified that the gate of J.C. Penney's exterior stockroom had been broken and "looked as though someone had pried [it] up." According to Feorene, J.C. Penney's exterior stockroom was located on the floor below Diamond's, but was otherwise in close proximity to Diamond's. Feorene testified that both stores also were close to the mall's elevator so that an individual could have pushed items from the storeroom onto the elevator and out of the elevator into Diamond's without great difficulty. Feorene estimated that it would have taken an individual approximately one to two hours to move all of the televisions and DVD players that police found in Diamond's. Feorene testified that his employees monitored J.C. Penney's exterior stockroom while on their various shifts from 9:00 a.m. to 9:00 p.m., but that none of the employees ever reported seeing any suspicious activity around the stockroom. Based on the location of the stores and the amount of time it would have taken to move the items, Feorene testified that the individual who moved the items from the storeroom and into Diamond's could not have done so between the hours of 9:00 a.m. and 9:00 p.m. *Page 8 
 {¶ 17} Joshua Dodson, a former Rolling Acres security guard, testified that he had seen Shawhan once before when officers had removed Shawhan from the false wall in the mall on March 27, 2007. Dodson further testified that he was working on April 10, 2007 when a male suspect was found inside one of the mall's stores, but fled before officers could arrive. According to Dodson, he informed officers that Shawhan was the male suspect who fled from the mall.
 {¶ 18} Officer David Crockett testified that he was given a description of Shawhan and told to be on the look out for Shawhan when started his shift on the night of April 10, 2007. At approximately 10:00 p.m., Officer Crockett and his partner patrolled Rolling Acres' parking lot and the surrounding area. Officer Crockett testified that his partner saw "a tall skinny male duck down between some trailers *** on the southwest side of the mall." Upon further investigation, the officers discovered that the individual was Shawhan and took him into custody.
 {¶ 19} Finally, Lisa Jo Jones, Shawhan's mother, testified that Shawhan was "basically homeless" and "just kind of drifted around." Jones testified that she gave Shawhan money on several occasions and helped him to purchase items from Plato's Closet. Jones testified that Shawhan liked the clothing at Plato's Closet.
 {¶ 20} Based on our review of the record, we cannot conclude that the jury lost its way in convicting Shawhan. The record reflects that Shawhan created a living space in Diamond's, as evidenced by his flight from the area, his fingerprint, and the personal items that he left in the store, including a receipt from Plato's Closet. The record further reflects that Diamond's was filled with numerous items that were taken from Stockade, GNC, and J.C. Penney's, and that those items were taken at night when the mall was unoccupied. See R.C. 2909.01(C)(4) (defining an "occupied structure" as a building where "[a]t the time, any person is present or *Page 9 
likely to be present"). Based on the foregoing, the record supports the jury's determination that Shawhan committed the crimes of breaking and entering, criminal trespass, and receiving stolen property. Consequently, Shawhan's convictions are not against the manifest weight of the evidence.
 {¶ 21} Having disposed of Shawhan's challenge to the weight of the evidence, we similarly dispose of his sufficiency challenge. SeeRoberts, supra, at *2. Shawhan's second and third assignments of error lack merit.
 Assignment of Error Number One "APPELLANT'S CONVICTIONS FOR BREAKING AND ENTERING CONSTITUTED AN ERROR AS A MATTER OF LAW BECAUSE THE STATE OF OHIO FAILED TO PROVE THAT THE STRUCTURES ALLEGEDLY TRESPASSED UPON BY THE APPELLANT WERE UNOCCUPIED STRUCTURES, AN ESSENTIAL ELEMENT OF EACH OFFENSE."
 {¶ 22} In his first assignment of error, Shawhan argues that his breaking and entering conviction is based on insufficient evidence because the State failed to prove that the structures he allegedly entered were "unoccupied structures." Specifically, he argues that the break-ins could have occurred during regular business hours when the stores were occupied. Based on the disposition of Shawhan's second and third assignments of error, Shawhan's first assignment of error is moot, and we decline to address it. App. R. 12(A)(1)(c).
 III {¶ 23} Shawhan's first assignment of error is moot and his remaining assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed. *Page 10 
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellant.
CARR, P. J. BELFANCE, J. CONCUR *Page 1