OPINION
{¶ 1} Defendant-appellant, Devon Lyles (hereinafter "Lyles"), appeals the judgment of the Allen County Court of Common Pleas convicting and sentencing him for three counts of trafficking in crack cocaine and one count of permitting drug abuse.
 {¶ 2} The charges stem from three controlled buys in which the confidential informant, Anthony Owens (hereinafter "Owens"), would purchase drugs from Lyles. The first controlled buy occurred on May 7, 2003, when Owens went to Lyles home and purchased 11.23 grams of crack cocaine. On June 13, 2003, Owens made a second controlled buy from Lyles when Owens drove his car to Lyles home to purchase 11.29 grams of crack cocaine. The third controlled buy between Lyles and Owens took place on January 15, 2004, in Lyles automobile and involved approximately 6 grams of crack cocaine.
 {¶ 3} On February 12, 2004, Lyles was indicted for three counts of drug trafficking and one count of permitting drug abuse. A jury trial was conducted and the jury found Lyles guilty on all four counts.
 {¶ 4} Subsequently, the trial court sentenced Lyles to three years of imprisonment for count one and three years imprisonment for count two of trafficking in crack cocaine in violation of R.C. 2925.03(A)(C)(4)(e), both felonies in the second degree; two years imprisonment for count three of trafficking in crack cocaine in violation of R.C. 2925.03(A)(C)(4)(d), a felony of the second degree; and ten months imprisonment for count four of permitting drug abuse in violation of R.C. 2925.13(A)(C)(3), a felony of the fifth degree. The trial court ordered that the sentences imposed for counts one, two, and three be served consecutive to each other and concurrent to the sentence for count four which together totals eight years imprisonment.
 {¶ 5} From this conviction and sentence Lyles appeals and sets forth six assignments of error for our review.
 ASSIGNMENT OF ERROR NO. I The Trial Court erred in sentencing the Defendant by notimposing a minimum sentence, in violation of R.C. § 2929.14(B).
 {¶ 6} In his first assignment of error, Lyles argues that the trial court was required to impose a minimum sentence pursuant to R.C. 2929.14(B) because he had not served a prior term of imprisonment.
 {¶ 7} R.C. 2929.14(B) provides in pertinent part:
* * * if the court imposing a sentence upon an offender for afelony elects or is required to impose a prison term on theoffender, the court shall impose the shortest prison termauthorized for the offense pursuant to division (A) of thissection, unless one or more of the following applies:
 (1) The offender was serving a prison term at the time of theoffense, or the offender previously had served a prison term.
 (2) The court finds on the record that the shortest prisonterm will demean the seriousness of the offender's conduct orwill not adequately protect the public from future crime by theoffender or others.
In order to impose a prison sentence that is longer than the minimum term, the trial court is required to "find on the record" that the shortest prison term would demean the seriousness of the offender's conduct or would not adequately protect the public. The trial court is not, however, required to give its reasons
for those findings before it can impose more than the minimum authorized sentence. State v. Edmonson (1999),86 Ohio St.3d 324, 326, 1999-Ohio-110, 715 N.E.2d 131.
 {¶ 8} At the sentencing hearing, the trial court examined the statutory sentencing requirements and found under R.C. 2929.12(B) that the defendant acted for hire or as part of organized criminal activity. The trial court also found that the offender had a history of criminal convictions, and that the offender showed no genuine remorse under R.C. 2929.12(D).
 {¶ 9} The trial court further found "that the shortest term would demean the seriousness of the defendant's conduct. And that the shortest term-shortest prison term would not adequately protect the public * * * from future crimes by the defendant or others."
 {¶ 10} Since the trial court made the necessary findings under R.C. 2929.14(B) for imposing more than a minimum sentence, and there was some basis for those findings in the record, we find Lyles argument to be without merit. Assignment of Error No. I is, therefore, overruled.
 ASSIGNMENT OF ERROR NO. II The Trial Court erred in sentencing the Defendant by imposingconsecutive sentences, in violation of R.C. § 2929.14(E)(4).
 {¶ 11} In his second assignment of error, Lyles asserts that the trial court never made the required finding that "two or more offenses were part of one or more courses of conduct" under R.C.2929.14(E)(4)(b). Lyles also maintains that the trial court's findings were unsupported by the record.
 {¶ 12} Before consecutive sentences may be imposed, the trial court is required to make several findings in accordance with R.C. 2929.14 and R.C. 2929.19. First, the sentencing court must find that consecutive sentences are "necessary to protect the public" or to "punish the offender." R.C. 2929.14(E)(4). Second, the court must find that consecutive sentences are "not disproportionate to the seriousness of the offender's conduct and to the danger he poses to the public." Id. Finally, the trial court must find the existence of one of the three following circumstances:
(a) the offender committed one or more of the multipleoffenses while the offender was awaiting trial or sentencing * * *or was under post-release control for a prior offense;
 (b) * * * the harm caused by * * * the multiple offenses * * *was so great or unusual that no single prison term for any of theoffenses committed as part of a single course of conductadequately reflects the seriousness of the offender's conduct;
 (c) [t]he offender's history of criminal conduct demonstratesthat consecutive sentences are necessary to protect the publicfrom future crime by the offender.
R.C. 2929.14(E)(4).
 {¶ 13} In addition to these findings, the trial court must give its reasons for imposing consecutive sentences. See R.C.2929.19(B)(2)(c). Therefore, the trial court must not only make the required findings under R.C. 2929.14(E)(4), but must also substantiate those findings, on the record, by "identifying specific reasons supporting * * * [the imposition of consecutive sentences]." State v. Brice (March 29, 2000), 4th Dist. No. 98CA24, citations omitted.
 {¶ 14} At the sentencing hearing in this case, the trial court found under R.C. 2929.14(E)(4) that consecutive sentences are necessary to protect the public and to punish the defendant. The trial court further found that "consecutive sentences are not disproportionate to the conduct of defendant in that the harm done was so great or unusual that a single term does not adequately reflect the seriousness of the defendant's conduct."
 {¶ 15} Lyles asserts that the trial court "rested its decision to impose consecutive sentences in large part upon subsection (E)(4)(b)" and that it failed to make the required findings under that provision. However, before it may impose consecutive sentences, the trial court must make a finding under R.C. 2929.14(E)(4)(a), (b), or (c). See R.C. 2929.14(E)(4), emphasis added.
 {¶ 16} At the sentencing hearing, the trial court stated that given "[t]he amount involved and the Defendant's criminal history. Previous drug offenses. The court finds that that consecutive sentences are needed to protect the public." We find that the trial court made the required finding for consecutive sentences under R.C. 2929.14(E)(4)(c).
 {¶ 17} In sentencing a defendant, the trial court does not have to "recite the precise words of the sentencing statutes in a talismanic ritual when imposing a sentence as long as it is clear from the record * * * that the trial court engaged in the appropriate analysis." State v. King (2005), 3d Dist. No. 4-04-33, 2005-Ohio-3760, ¶ 15, citations omitted. While the trial court's findings did not recite the exact words used in the sentencing statute, it is clear from the record that the trial court engaged in the proper analysis.
 {¶ 18} Assuming, arguendo, that Lyles contentions regarding the findings under R.C. 2929.14(E)(4)(b) are correct, the trial court's imposition of consecutive sentence would still meet the statutory requirements based on the trial court's findings under R.C. 2929.14(E)(4)(c). Since the trial court is only required to find the existence of one factor in R.C. 2929.14(E)(4)(a)-(c), in order to have the authority to impose a consecutive sentence, and the trial court did so under (E)(4)(c), it is unnecessary to address Lyles' arguments contending that the trial court failed to correctly make the required findings under R.C.2929.14(E)(4)(b).
 {¶ 19} Lyles also asserts the record does not support the trial courts' findings and contends the trial court failed to state its reasons for the imposition of consecutive sentences on the record at the sentencing hearing.
 {¶ 20} Upon review, we find that the trial court's findings and reasons were supported by the record. Lyles has previous criminal convictions for possession of marijuana and possession of crack cocaine. Moreover, the three controlled buys occurred over a substantial period of time and involved larger amounts of money. The first controlled buy occurred on May 7, 2003, and involved a five hundred dollar purchase of crack cocaine. On June 13, 2003, the second controlled buy took place also involving a five hundred dollar purchase of crack cocaine. The third and final controlled buy between Owens and Lyles took place on January 15, 2004, and involved a two hundred and fifty dollar purchase of crack cocaine.
 {¶ 21} The trial court stated its reasons on the record and these included the defendant's previous criminal history, the large amount of drugs involved, and the fact that the transactions occurred over a long time period.
 {¶ 22} We must, therefore, conclude that Lyles has been unable to show clearly and convincingly that the trial court erred in imposing consecutive sentences. Accordingly, Lyles' second assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. III Sentencing in this case violated the Apprendi doctrine asexplained in Blakely v. Washington and was thereforeunconstitutional.
 {¶ 23} In his third assignment of error, Lyles argues that his non minimum consecutive sentence violates Blakely v.Washington (2004), 542 U.S. 296, 124 S.Ct. 2531,159 L.Ed.2d 403, and Apprendi v. New Jersey (2000), 530 U.S. 466,120 S.Ct. 2348, 147 L.Ed.2d 435, since the judge, not the jury, made the findings for imposing his non minimum consecutive sentence. This court has previously determined that Blakely is not applicable to Ohio's statutory sentencing framework. See State v. Trubee
(2005), 3d Dist. No. 9-03-65, 2005-Ohio-552, at ¶ 16-38. Therefore, the appellant's third assignment of error is overruled.
 {¶ 24} For clarity of analysis, we address Lyles' fourth, fifth, and sixth assignments of error together.
 ASSIGNMENT OF ERROR NO. IV The conviction for the first transaction was against themanifest weight of the evidence.
 ASSIGNMENT OF ERROR NO. V The conviction for the second transaction was against themanifest weight of the evidence.
 ASSIGNMENT OF ERROR NO. VI The conviction for the third transaction was against themanifest weight of the evidence.
 {¶ 25} In his fourth, fifth, and sixth assignments of error, Lyles argues that the convictions for each of the three drug transactions were against the manifest weight of the evidence because the state lacked evidence to corroborate the confidential informant's testimony and because inconsistent tape recordings of the transactions exist.
 {¶ 26} In determining whether a conviction is against the manifest weight of the evidence, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. Statev. Thompkins (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541, citing State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717.
 {¶ 27} Regarding the first controlled buy, Lyle maintains that the "lack of corroboration evidence and the actual refuting evidence (the inconsistent recording) left reasonable doubt as to whether Mr. Lyles was set up by the confidential informant." Lyles asserts that the state found no evidence to corroborate the confidential informant's version of events and that the only two pieces of physical evidence were the physical drugs and the tape recording of the transaction. Lyles argues the tape recording of the transaction does not contain the phrase "halfie" as claimed by the state, thus, the tape is inconsistent. Lyles further claims that the state witnesses conceded that the confidential informant could have conducted a drug transaction with a third person or retrieved drugs from a hidden location.
 {¶ 28} After reviewing the record including the testimony of all witnesses and the tape recordings, we find Lyles' arguments unavailing.
 {¶ 29} As evidence of the first transaction, the state presented the testimony of Sergeant Clyde Breitigan (hereinafter "Sergeant Breitigan"). Sergeant Breitigan testified to the procedure the officers used in arranging the first controlled buy. Sergeant Breitigan also testified that he and Investigator Kyle Fittro (hereinafter "Investigator Fittro") met Owens in the parking lot of a fire station. Sergeant Breitigan further testified that he searched the confidential informant immediately prior to the controlled buy and that the confidential informant did not have any drugs, money, or contraband in his possession. Thereafter, Sergeant Breitigan installed a listening device on Owens and provided him with the money to purchase the drugs. The confidential informant then left and walked to Lyles' home. Throughout the transaction, Sergeant Breitigan and Investigator Fittro monitored Owens over an audio transmitter. When the confidential informant returned, Sergeant Breitigan watched him relinquish to Investigator Fittro what was later determined to be crack cocaine.
 {¶ 30} The state also called Anthony Owens, Jr., the confidential informant, to testify regarding the first drug transaction. Owens testified that he contacted Lyles and arranged the transaction. Thereafter, Owens contacted the police and agreed to meet them at a firehouse where he was wired and provided money to purchase drugs. Further, Owens described the transfer of drugs in exchange for five hundred dollars.
 {¶ 31} Next, the state presented the testimony of Investigator Fittro. Investigator Fittro testified to the pre-buy procedures and the post-buy search of the confidential informant. According to Investigator Fittro, after the transaction occurred Owens handed him the drugs and then he searched Owens and found no contraband of any kind.
 {¶ 32} The fact that law enforcement temporarily lost sight of the confidential informant for a short time period does not prevent the jury from finding Lyles guilty of the first count of drug trafficking since law enforcement officers maintained audio surveillance of the confidential informant during the controlled buy. Moreover, the mere fact that the state's witnesses conceded on cross examination it was possible for a confidential informant to meet with someone on the way to a controlled buy or to place drugs somewhere and retrieve the drugs later does not automatically result in a guilty verdict being against the manifest weight of the evidence. This is especially true given the officers' testimony that they maintained audio surveillance of the confidential informant and considering the confidential informant's own testimony regarding the transaction. Although the conversations on the audio tape for the first controlled buy are unintelligible in various parts, this circumstance of itself does not necessarily undermine the testimony given at trial.
 {¶ 33} After reviewing the evidence, we are unable to conclude that the jury clearly lost its way in finding Lyles guilty of the first count of trafficking in crack cocaine. Lyles' conviction for count one of trafficking in crack cocaine is not against the manifest weight of the evidence.
 {¶ 34} Lyles asserts that the conviction for the second transaction was against the manifest weight of the evidence because the two minute cursory search of the confidential informant's vehicle was inadequate, there was no physical evidence to corroborate the confidential informant's testimony, and a tape recording of the transaction exists which is inconsistent with the testimony at trial, thus leaving reasonable doubt as to whether Lyles was "set up" by the confidential informant.
 {¶ 35} For the second controlled buy, the state presented the testimony of Investigator Fittro. Investigator Fittro testified to the pre-buy procedure used by the police including a search of Owens, the use of a transmitter to record the conversation and the issuance of five hundred dollars for the purchase of drugs. For the second controlled buy, Owens drove his automobile to Lyles house to purchase the crack cocaine. During the controlled buy, Investigator Fittro and Investigator Mohler followed Owens in one vehicle, while Investigator Triglia and Investigator Roberts conducted back up surveillance in a different vehicle. According to Investigator Fittro, he observed Owens park his vehicle at a property owned by Lyles. Investigator Fittro testified that he listened to the transaction and heard Owens request "the same thing as last time" and a male responded "a halfie." After Owens left the home and met with police, he turned over what was later determined to be crack cocaine to Investigator Fittro who conducted the post-buy search of Owens.
 {¶ 36} The state also presented the testimony of Investigator Mohler, who stated that he conducted the search of the automobile prior to the second controlled buy. Investigator Mohler testified to searching under the car seats, in the consoles, the glove box, and other areas of the car where individuals might attempt to hide contraband and that he found no contraband of any kind in Owens' car. Further, Investigator Mohler followed Owens during the second transaction. After the transaction, Investigator Mohler conducted the post-buy search of Owens vehicle and again found no contraband of any kind.
 {¶ 37} Investigator Triglia testified to his surveillance of Owens during the second transaction. According to Investigator Triglia, he observed Owens walk up to the door. Thereafter, Investigator Triglia watched Owens exit the porch and enter his vehicle.
 {¶ 38} Finally, the state presented Owens' testimony and a tape recording of the second controlled buy. Owens testified that he drove his vehicle over to Lyles' home, purchased drugs, then left and met with the law enforcement officers.
 {¶ 39} Upon reviewing the foregoing evidence, we are unable to find that the jury clearly lost its way in convicting Lyles of trafficking in crack cocaine for the second controlled buy. Law enforcement officers' conducted a pre-buy search of the confidential informant and his vehicle and determined that Owens did not have any illegal drugs in his possession. In addition, the audio and visual surveillance of the confidential informant, the physical drugs, and the confidential informant's testimony provided evidence that Lyles conducted the second controlled buy with the confidential informant. Upon a careful review of the tape recording, we were able to discern a conversation similar to Investigator Fittro's testimony regarding the second controlled buy.
 {¶ 40} Given the evidence presented at trial, we hold that Lyles' conviction for trafficking in crack cocaine for the second controlled buy is not against the manifest weight of the evidence.
 {¶ 41} For the third transaction, Lyles argues that his conviction was against the manifest weight of the evidence. In support of his contention, Lyles asserts the confidential informant was lost for several minutes, had an encounter with an unknown third person, and again that a recording of the transaction exists which is inconsistent with testimony given at trial, leaving reasonable doubt as to whether he was "set up" by the confidential informant.
 {¶ 42} The state presented the testimony of Investigator Mohler and Investigator Fittro. Investigator Mohler testified that he searched the confidential informant prior to the controlled buy, conducted surveillance, saw Lyles sitting in a black car, and received the drugs from Owens following the completion of the transaction. Investigator Fittro testified that he saw Owens enter a black Monte Carlo and that he knew Lyles owned a similar car. Further, Investigator Fittro observed Owens while he was in the black Monte Carlo for a few minutes, and then watched Owens leave. He also testified that he saw the unidentified third party walk past Owens, that the two exchanged short verbal greetings, but that no physical contact occurred.
 {¶ 43} Finally, the state presented the testimony of Owens. Owens testified to the arrangement of the transaction. According to Owens, he met Lyles in a parking lot and entered Lyles' vehicle where the third drug transaction occurred. Thereafter, Owens exited the vehicle and said a brief greeting to an unknown third party. Owens then met with law enforcement and turned over the drugs.
 {¶ 44} Based on the evidence presented by the state at trial, we do not find that the jury clearly lost its way in finding Lyles guilty of trafficking in crack cocaine for the third controlled buy. Law enforcement officers searched the confidential informant before the third controlled buy occurred and found no contraband. Furthermore, law enforcement kept both audio and visual surveillance of the confidential informant. Investigator Fittro watched the confidential informant enter a vehicle of the same make as a vehicle Lyles owned, remain in the vehicle for a short time period, and then exit the vehicle. Shortly after the confidential informant exited the vehicle, he was picked up by law enforcement officers. The confidential informant then turned over drugs to law enforcement officers. Moreover, the confidential informant testified regarding the third transaction. Owens brief conversation with an unknown third party was, under the circumstances described in the trial testimony, not of such a nature as to give rise to a reasonable doubt as to the source of the drugs. Investigator Fittro testified that the conversation was extremely brief and that no physical contact occurred between the two individuals.
 {¶ 45} After reviewing the evidence, including the tape and Investigator Mohler's, Investigator Fittro's, and Owens' testimonies, we do not find that Lyles conviction for trafficking crack cocaine involving the third controlled buy was against the manifest weight of the evidence.
 {¶ 46} Lyles further argues that law enforcement officers destroyed the tape recordings that occurred prior to the transactions, pointing to Investigator Fittro's testimony. Investigator Fittro testified on cross examination that he "didn't know if the [tapes] have been destroyed. They're just not entered into evidence." Investigator Fittro does not testify that the tapes were destroyed. Lyles has been unable to show any evidence on the record that the tapes were actually destroyed; therefore, we find this argument to be without merit.
 {¶ 47} We have carefully examined all of Lyles' arguments regarding this assignment of error. Upon a review of the entire record, we find that the jury did not clearly lose its way in convicting Lyles for the first, second, and third transactions. Lyles' fourth, fifth, and sixth assignments of error are overruled.
 {¶ 48} Have found no error prejudicial to appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment Affirmed.
 Rogers and Shaw, J.J., concur.