{¶ 1} Defendant-appellant, Aaron Profanchik, appeals from a Mahoning County Common Pleas Court judgment convicting him of burglary and possession of cocaine, following his guilty pleas, and the sentence that followed.
 {¶ 2} This appeal arises from two separate criminal cases.
 {¶ 3 } In the first case, a Mahoning County grand jury indicted appellant on one count of burglary, a second-degree felony in violation of R.C. 2911.12(A)(2)(C). Appellant entered a plea of not guilty.
 {¶ 4} While out on bond, appellant was charged with possession of cocaine, a fourth-degree felony in violation of R.C.2925.11(A)(C)(4)(b). This resulted in the second case.
 {¶ 5} On July 13, 2006, appellant changed his plea to guilty in the burglary case and entered a plea of guilty in the possession of cocaine case, in which he also waived indictment. In exchange for his guilty pleas, plaintiff-appellee, the State of Ohio, agreed to stand silent at sentencing. The court conducted a plea hearing at which it accepted appellant's guilty pleas.
 {¶ 6} The court held one sentencing hearing. For the burglary conviction, the court sentenced appellant to five years in prison. For the possession conviction, the court sentenced appellant to 12 months in prison. The court ordered the two sentences to run concurrently.
 {¶ 7} Appellant filed a timely notice of appeal on September 13, 2006.
 {¶ 8} Appellant raises two assignments of error, the first of which states:
 {¶ 9} "THE TRIAL COURT ERRED WHEN IT IMPOSED NON-MINIMUM PRISON TERMS ON DEFENDANT-APPELLANT AARON PROFANCHIK BASED UPON FINDINGS MADE PURSUANT TO R.C. § 2929.14(B), WHICH WAS DECLARED UNCONSTITUTIONAL BY THE OHIO SUPREME COURT."
 {¶ 10} Appellant argues that the trial court based his non-minimum sentences on statutory factors that the Ohio Supreme Court found to be unconstitutional in State v. Foster, 109 Ohio St.3d 1, 845 N.E.2d 470,2006-Ohio-856. Thus, he asserts that we must vacate his sentence. Appellant points out that the trial court sentenced *Page 2 
him more than six months after the Supreme Court issued theFoster decision, yet the trial court still relied on R.C. 2929.14(B), which the Supreme Court expressly found to be unconstitutional.
 {¶ 11} In Foster, the Ohio Supreme Court held that Ohio's felony sentencing statutes requiring the trial court to make factual findings before imposing non-minimum or consecutive sentences violates the Sixth Amendment right to a jury trial. Foster, 109 Ohio St.3d at ¶ 83. Prior to Foster, the trial court was required to make certain factual findings when sentencing a defendant before deviating from the minimum sentence or imposing consecutive sentences. R.C. 2929.14(B) and (E)(4). InFoster, however, the Court severed the offending statutes, including R.C. 2929.14(B) regarding the deviation from the minimum sentence.Foster, at ¶ 96-97.
 {¶ 12} In this case, appellant pleaded guilty almost five months after the Supreme Court decided Foster. In his change of plea forms, appellant agreed that: "I HEREBY STIPULATE THAT THE JUDGE ALONE MAY MAKE ANY FACTUAL FINDINGS NECESSARY TO IMPOSE A SENTENCE FROM THE RANGE OF AVAILABLE SENTENCES FOR THIS PARTICULAR OFFENSE(S)" And at appellant's change of plea hearing, he specifically consented to the judge being the fact-finder at sentencing. (Plea Tr. 6).
 {¶ 13} At his sentencing hearing, the court made the following finding:
 {¶ 14} "Court further finds that, based on the defendant's juvenile record, the shortest prison term will demean the seriousness of the offense and not adequately protect the public or punish the defendant and, therefore, the Court imposes a greater time." (Sentencing Tr. 5).
 {¶ 15} The court then deviated from the minimum sentence on both of appellant's counts. At the sentencing hearing the court did not reference R.C. 2929.14(B). R.C. 2929.14(B) was severed by the Supreme Court in Foster. It provided that before imposing a non-minimum sentence, the trial court was required to find on the record that the shortest prison term would demean the seriousness of the offender's conduct or would not adequately protect the public from future crime *Page 3 
by the offender or others. R.C. 2929.14(B)(2).
 {¶ 16} But in its judgment entry of sentence for the possession charge, the court found: "The Court further finds pursuant to R.C.2929.14(B) that the shortest prison term possible will demean the seriousness of the offense AND will not adequately protect the public and therefore imposes a greater term." (Emphasis added.) The court made almost the identical finding in its judgment entry of the sentence for the burglary charge.
 {¶ 17} We are now faced with two questions: (1) did the trial court err in relying on R.C. 2929.14(B) in its judgment entry of sentence; and if so, (2) did appellant waive this error by consenting to the judge being the fact-finder at sentencing.
 {¶ 18} Both parties have filed notices of supplemental authority stating that they are relying on this court's recent decision inState v. Moore, 7th Dist. No. 06-MA-60, 2007-Ohio-1574. InMoore, Brenda Moore was sentenced on March 20, 2006, approximately three weeks after the Supreme Court released Foster. The trial court sentenced Moore to a more-than-the-minimum prison term finding, "pursuant to R.C.2929.14(B) that the shortest prison term possible will demean the seriousness of the offense AND will not adequately protect the public and therefore [the court] imposes a greater term." On appeal, Moore argued that the trial court's reliance on R.C. 2929.14(B) required reversal of her sentence because it established that the court failed to follow Foster's mandate.
 {¶ 19} This court pointed out that post-Foster, a trial court is free to consider any factors it finds relevant in sentencing a defendant regardless of whether the factors were previously contained in the now-excised statutory sections. Id. at ¶ 9. However, we held that it is error and a violation of Foster for a trial court to expressly cite to and rely upon a statutory provision that was specifically found to be unconstitutional by the Ohio Supreme Court. Id. We stated that where a sentencing court's language seemingly ignores Foster's implications, we must reverse the sentence and remand for resentencing. Id. at ¶ 10. We further stated: *Page 4 
 {¶ 20} "The trial court here placed a limit on itself. However, the Supreme Court's resentencing order requires that such limits be lifted as they are unconstitutional. Trial courts cannot choose to ignore (or accidentally ignore) Foster and act as if judicial fact-finding is still required." Id. at ¶ 12.
 {¶ 21} Additionally, we pointed out that the error is just as unconstitutional post-Foster as it was pre-Foster. Id. at ¶ 13. We reasoned that a trial court's act of restricting itself and relying on a recently-declared-unconstitutional statute cannot be a non-constitutional error simply because in reality the Ohio Supreme Court has erased the statute. Id.
 {¶ 22} Finally, we concluded:
 {¶ 23} "Thus, the trial court can in its new statutorily unfettered sentencing discretion consider the factors that were previously-required factual findings in order to impose what the court finds to be an appropriate sentence. However, the court cannot cite a severed and excised unconstitutional statute without calling into question whether the court actually followed the requirements of Foster. The timing of the hearing and entry within weeks of Foster further arouses our suspicions regarding the court's proper application of the new precedent." Id. at ¶ 14.
 {¶ 24} Accordingly, we vacated Moore's sentence and remanded the case for resentencing.
 {¶ 25} Based on Moore, in the present case, the trial court erred by citing to and relying on R.C. 2929.14(B) in its judgment entries of sentence. The court specifically stated that pursuant to R.C.2929.14(B) it found that the shortest prison term would demean the seriousness of the offense and would not adequately protect the public. This called into question whether the court followed the requirements ofFoster.
 {¶ 26} At the sentencing hearing, the court did not cite to the severed statutory section in support of its finding that the shortest prison term would demean the seriousness of the offense and would not adequately protect the public. In Moore, we stated that a trial court is free to consider any factor it finds to be relevant, *Page 5 
regardless of whether the factor happened to have been previously contained in the now-excised statutory provisions. Id. at ¶ 9. Accordingly, had the trial court simply used this factor, as it did at the hearing, appellant's sentence would not be in violation ofFoster. However, in both of its judgment entries of sentence, the court specifically cited to and relied upon the now-excised R.C. 2929.14(B). Thus, as was the case in Moore, the court's judgment entry reads in violation of the Foster holding. Therefore, in this case the result must be the same as in Moore-appellant's sentences should be vacated and the cases remanded for resentencing.
 {¶ 27} The one difference in this case is that when appellant entered his plea, the court asked him if he consented to it being the fact finder, to which appellant responded, "yes." Additionally, in his change of plea forms, appellant specifically stipulated to the court making any findings necessary for sentencing.
 {¶ 28} In Foster, while rejecting the idea that waiver applied, the Court stated:
 {¶ 29} "Waiver indicates an `"intentional relinquishment or abandonment of a known right."' United States v. Olano (1993),507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508, quoting Johnson v.Zerbst (1938), 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461. Foster could not have relinquished his sentencing objections as a known right when no one could have predicted that Blakely [v. Washington (2004),542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403,] would extend theApprendi [v. New Jersey (2000), 530 U.S. 466, 120 S.Ct. 2348,147 L.Ed.2d 435,] doctrine to redefine `statutory maximum.' Smylie v.State (Ind. 2005), 823 N.E.2d 679, 687. In addition, we note that Blakely's guilty plea did not create an inference that he waived a jury's finding of the additional fact of `deliberate cruelty.' SeeBlakely, 542 U.S. at 310, 124 S.Ct. 2531, 159 L.Ed.2d 403 (`When a defendant pleads guilty, the State is free to seek judicial sentence enhancements so long as the defendant either stipulates to the relevantfacts or consents to judicial fact-finding' [emphasis added]). We have no such stipulations or consent to judicial factfinding in any of the cases before us." Foster, 109 Ohio St.3d at ¶ 31.
 {¶ 30} In the present case, we do have a consent to judicial fact-finding before *Page 6 
us. However, this difference in the facts does not warrant altering the outcome of this appeal. While appellant could stipulate to the court engaging in fact-finding, he could not consent to the court applying an unconstitutional and severed statute. The trial court restricted itself in sentencing appellant when the Supreme Court has held that such a limit is unconstitutional. As we stated in Moore, "the court cannot cite a severed and excised unconstitutional statute without calling into question whether the court actually followed the requirements ofFoster." Id. at ¶ 14.
 {¶ 31} We cannot simply reach this conclusion, however, without mentioning the Ohio Supreme Court's recent decision in State v.Payne, 114 Ohio St.3d 502, 873 N.E.2d 306, 2007-Ohio-4642. InPayne, the court noted that Foster followed Blakely v. Washington
(2004), 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403, in holding that statutes which required "`judicial fact-finding before imposition of a sentence greater than the maximum term authorized by a jury verdict or admission of the defendant'" violated a defendant's right to a jury trial. Id. at ¶ 1, quoting Foster, 109 Ohio St.3d at paragraph one of the syllabus. The Court was asked to determine whether, when a defendant's sentencing occurred after Blakely, the defendant's failure to object in the trial court to a sentence that violatedBlakely forfeited the issue on appeal. The Court concluded that it did. The Court held that: "[A] lack of an objection in the trial court forfeits the Blakely issue for purposes of appeal when the sentencing occurred after the announcement of Blakely." Id. at ¶ 31.
 {¶ 32} In Payne, Payne was sentenced after Blakely and beforeFoster.
He did not raise an objection to his sentence with the trial court. However, Payne appealed his sentence raising a Blakely issue. The court of appeals held that because Payne did not object to his sentence based on Blakely and the constitutionality of Ohio's sentencing scheme, he waived his Blakely argument on appeal. Upon finding that its decision was in conflict with State v. Miller, 2d Dist. No. 21054,2006-Ohio-1138, the court of appeals certified a conflict to the Ohio Supreme Court.
 {¶ 33} The Court found that by failing to object to his sentence in the trial court *Page 7 
and raise a Blakely issue, Payne forfeited the issue on appeal. Id. at 21. Therefore, the Court undertook a plain error review of Payne's sentence. It found that no plain error occurred because Payne could not establish that but for the Blakely error, he would have received a more lenient sentence. Id. at ¶ 25.
 {¶ 34} In Payne, the key fact was that Payne did not raise an objection in the trial court regarding his sentence. Presumably Payne should have objected at his sentencing hearing. But this case is distinguishable. At appellant's sentencing hearing the trial court did not cite to the unconstitutional statute. Thus, at the sentencing hearing there was no error for appellant to object to. The court's error was not evident until it entered its judgment, in which it relied on the unconstitutional and severed section of the sentencing statute. At that point in time, appellant's only remedy was to file an appeal from his sentence. For this reason, we find that Payne is distinguishable from the present case.
 {¶ 35} Accordingly, appellant's first assignment of error has merit.
 {¶ 36} Appellant's second assignment of error states:
 {¶ 37} "THE TRIAL COURT ERRED IN VIOLATION OF BOTH THE UNITED STATES AND OHIO CONSTITUTIONS BY ACCEPTING DEFENDANT-APPELLANT AARON PROFANCHIK'S GUILTY PLEAS WHEN THOSE PLEAS WERE NOT KNOWINGLY, INTELLIGENTLY, AND VOLUNTARILY MADE."
 {¶ 38} Here appellant argues that he did not knowingly, intelligently, and voluntarily enter his guilty pleas. He claims that he simply gave the court the answers it wanted to hear without any further indication that he understood the proceedings or the consequences of his plea. He points out that at the hearing, his own attorney stated, "I believe he understands what he's doing." (Plea Tr. 3). Thus, appellant asserts that his own attorney did not know for certain whether appellant understood the implication of his pleas. He also points out that he informed the court that he read some portions of the plea forms and his attorney read some portions to him. Appellant alleges that this too demonstrated that he did not understand the plea process. Finally, appellant argues that at his sentencing hearing he further *Page 8 
demonstrated that he did not understand the proceedings because after the court announced its sentence, he asked the court to sit down with him one-on-one to allow him to explain his behavior. All of these things taken together, appellant argues, demonstrate that he was simply going through the motions of the proceedings without a real understanding of the consequences of his plea.
 {¶ 39} When determining the voluntariness of a plea, we must consider all of the relevant circumstances surrounding it. State v. Trubee, 3d Dist. No. 9-03-65, 2005-Ohio-552, at ¶ 8, citing Brady v. UnitedStates (1970), 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747. Pursuant to Crim.R. 11(C)(2), the trial court must follow a certain procedure for accepting guilty pleas in felony cases. Before the court can accept a guilty plea to a felony charge, it must conduct a colloquy with the defendant to determine that he understands the plea he is entering and the rights he is voluntarily waiving. Crim.R. 11(C)(2). If the plea is not knowing and voluntary, it has been obtained in violation of due process and is void. State v. Martinez, 7th Dist. No. 03-MA-196,2004-Ohio-6806, at ¶ 11, citing Boykin v. Alabama (1969), 395 U.S. 238,243, 89 S.Ct. 1709, 23 L.Ed.2d 274.
 {¶ 40} A trial court must strictly comply with Crim.R. 11(C)(2) pertaining to the waiver of federal constitutional rights.Martinez, 7th Dist. No. 03-MA-196, at ¶ 12. These rights include the right against self-incrimination, the right to a jury trial, the right to confront one's accusers, and the right to compel witnesses to testify by compulsory process. State v. Tucci, 7th Dist. No. 01-CA-234, 2002-Ohio-6903, at ¶ 11, citing Boykin, supra; State v. Ballard (1981),66 Ohio St.2d 473, 478, 423 N.E.2d 115, fn. 4.
 {¶ 41} A trial court need only substantially comply with Crim.R. 11(C)(2) pertaining to non-constitutional rights such as informing the defendant of "the nature of the charges with an understanding of the law in relation to the facts, the maximum penalty, and that after entering a guilty plea or a no contest plea, the court may proceed to judgment and sentence." Martinez, 7th Dist. No. 03-MA-196, at ¶ 12, citing Crim.R. 11(C)(2)(a)(b). *Page 9 
 {¶ 42} At the change of plea hearing, the trial court complied with all of the requirements of Crim.R. 11(C)(2). The colloquy between the court and appellant demonstrated as much.
 {¶ 43} Appellant stated that he went over both "Plea of Guilty" forms with his counsel. (Plea Tr. 5). The court then went over the charges appellant faced with him. (Plea Tr. 5). The court next informed appellant of the constitutional rights he was giving up by pleading guilty and asked if he understood that he was waiving these rights by pleading guilty, to which he responded "yes." (Plea Tr. 5-6). The court also informed appellant that he was giving up his right to appeal, which appellant indicated that he understood. (Plea Tr. 6). And the court informed him that upon accepting his pleas, it could proceed immediately to sentencing. (Plea Tr. 6). The court then informed appellant of the possible prison terms and fines he faced. (Plea Tr. 6-7). Appellant indicated that he understood his possible punishments. (Plea Tr. 7). The court further informed appellant about post-release control and the possibility of more prison time for violations of his post-release control. (Plea Tr. 8-9). Appellant again indicated that he understood. (Plea Tr. 8-9). Finally, the court questioned appellant:
 {¶ 44} "THE COURT: Are you freely and voluntarily entering into these pleas?
 {¶ 45} "THE DEFENDANT: Yes, ma'am.
 {¶ 46} "THE COURT: Has anyone promised you anything that's not been discussed here in court?
 {¶ 47} "THE DEFENDANT: No.
 {¶ 48} "THE COURT: Has anyone forced you to change your plea?
 {¶ 49} "THE DEFENDANT: No, ma'am.
 {¶ 50} "THE COURT: Has everything contained in these forms been explained fully to you by me and [your attorney]?
 {¶ 51} "THE DEFENDANT: Yes, ma'am.
 {¶ 52} "THE COURT: Did you read them or did you have them read to you?
 {¶ 53} "THE DEFENDANT: A little of both, a bit of both." (Plea Tr. 9-10). *Page 10 
 {¶ 54} The court's colloquy with appellant demonstrates that he entered his plea knowingly, voluntarily, and intelligently. The court covered all of the areas required by Crim.R. 11(C)(2) and appellant indicated that he understood all of the things the court explained to him.
 {¶ 55} Appellant claims that he simply gave the court the answers it wanted to hear without any indication that he actually understood the plea proceedings. However, if we were to believe appellant then every defendant who ever entered a guilty plea after engaging in a complete Crim.R. 11(C) colloquy with the trial court could argue that he was simply "going through the motions." Appellant has not pointed to any evidence that would suggest that he was unaware of what pleading guilty meant. Both the court and appellant's attorney went over the pleas with him, including the rights he was waiving and the potential punishments he faced. Thus, appellant's pleas were valid.
 {¶ 56} Additionally, appellant points to his sentencing hearing for support where he asked the court to allow him to explain his behavior to it "one-on-one." However, this occurred after the court sentenced him. Thus, it is not relevant as to whether appellant knew what he was doing when he entered his plea. Instead, it appears to have been a last-ditch effort to persuade the court to reduce the sentence it had just given him.
 {¶ 57} Furthermore, appellant never filed a motion in the trial court to withdraw his guilty plea. He entered his plea on July 13, 2006. The court did not hold his sentencing hearing until August 30, 2006. Had appellant entered his plea unknowingly, unintelligently, or involuntarily, then presumably he would have filed a motion to vacate his plea during the month and a half that he awaited sentencing.
 {¶ 58} Accordingly, appellant's second assignment of error is without merit.
 {¶ 59} For the reasons stated above, appellant's convictions are hereby affirmed. Appellant's sentences are hereby vacated and the matter is remanded to the trial court for resentencing.
Vukovich J., concurs.
 Waite, J., concurs. *Page 1