OPINION
{¶ 1} Defendant-appellant, Stacey Sellers, appeals from a Mahoning County Common Pleas Court judgment convicting him of two counts of aggravated robbery, one count of abduction, and one count of rape following his guilty plea, and the subsequent sentence.
 {¶ 2} On December 16, 2004, a Mahoning County grand jury indicted appellant on two counts of aggravated robbery, first-degree felonies in violation of R.C. 2911.01(A)(1)(C), and one count of abduction, a third-degree felony in violation of R.C. 2905.02(A)(1)(B). A grand jury later indicted appellant in a superseding indictment, which added a fourth count being rape, a first-degree felony in violation of R.C.2907.02(A)(2)(B), and repeat violent offender specifications for the aggravated robbery counts and the rape count. The repeat violent offender specifications stated that appellant had previously been convicted of or pleaded guilty to aggravated robbery and felonious assault in Trumbull County.
 {¶ 3} Appellant initially entered a plea of not guilty. But he later changed his plea pursuant to a Crim.R. 11 agreement. Appellant entered a guilty plea to the four counts in the indictment with a stipulation to a habitual sexual offender classification. In exchange, plaintiff-appellee, the State of Ohio, agreed to dismiss the repeat violent offender specifications and recommend an 18-year sentence to run concurrent with a sentence appellant was serving in a Trumbull County case.
 {¶ 4} The trial court accepted appellant's plea and found him guilty of the four counts. It then sentenced appellant to nine years on the first aggravated robbery count, five years on the second aggravated robbery count, five years on the abduction count, and ten years on the rape count. The court ordered appellant to serve these sentences consecutively for a total of 29 years in prison, and to serve these sentences concurrently to his sentence in the Trumbull County case. In a separate judgment entry, the court designated appellant as a habitual sexual offender.
 {¶ 5} Appellant filed a timely notice of appeal on December 22, 2006.
 {¶ 6} Appellant raises five assignments of error, the first of which states:
 {¶ 7} "THE TRIAL COURT ERRED BY FAILING TO PROVIDE REASONS *Page 2 
FOR THE SENTENCES IMPOSED UPON THE DEFENDANT PURSUANT TO THE POST STATE V. FOSTER DUTIES THAT CONTINUE TO EXIST RELATIVE TO RC 2929.11(A),2929.12, 2929.13 AND 2929.14."
 {¶ 8} Appellant argues that the trial court failed to consider the statutory sentencing factors regarding seriousness and recidivism before imposing sentence on him. He contends that the trial court should have somehow explained how it arrived at the sentences it imposed with reference to R.C. 2929.11 and R.C. 2929.12.
 {¶ 9} Prior to the Ohio Supreme Court's ruling in State v.Foster, 109 Ohio St.3d 1, 845 N.E.2d 470, 2006-Ohio-856, the trial court was required to make certain factual findings on the record before imposing non-minimum and consecutive sentences. R.C. 2929.14(B) and (E)(4). However, in Foster, the Supreme Court held that this judicial fact-finding violated the defendant's right to a jury trial. Id. at ¶ 83. Therefore, the Court severed those portions of Ohio's sentencing statutes that required the trial court to engage in judicial fact-finding.
 {¶ 10} The Court concluded, "trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." Id. at ¶ 100. The Court further instructed: "Courts shall consider those portions of the sentencing code that are unaffected by today's decision and impose any sentence within the appropriate felony range. If an offender is sentenced to multiple prison terms, the court is not barred from requiring those terms to be served consecutively." Id. at ¶ 105.
 {¶ 11} The same day Foster was decided, the Ohio Supreme Court decided a companion case. State v. Mathis, 109 Ohio St.3d 54, 846 N.E.2d 1,2006-Ohio-855. In Mathis, the Court clarified Foster adding:
 {¶ 12} "Although after Foster, the trial court is no longer compelled to make findings and give reasons at the sentencing hearing since R.C.2929.19(B)(2) has been excised, nevertheless, in exercising its discretion the court must carefully consider the statutes that apply to every felony case. Those include R.C. 2929.11, *Page 3 
which specifies the purposes of sentencing, and R.C. 2929.12, which provides guidance in considering factors relating to the seriousness of the offense and recidivism of the offender. In addition, the sentencing court must be guided by statutes that are specific to the case itself." Id. at ¶ 38.
 {¶ 13} Appellant pleaded guilty to three first-degree felonies and one third-degree felony. The prison terms for a first degree felony are three, four, five, six, seven, eight, nine, or ten years. R.C.2929.14(A)(1). The prison terms for a third-degree felony are one, two, three, four, or five years. R.C. 2929.14(A)(3).
 {¶ 14} The trial court sentenced appellant to nine years on one count of aggravated robbery, five years on the second count of aggravated robbery, five years on the abduction count, and ten years on the rape count and ordered that he serve these sentences consecutively. All of these sentences are within the applicable statutory ranges.
 {¶ 15} Furthermore, in its judgment entry, the trial court stated that it considered "the record, oral statements, any victim impact statement and presentence report (waived), as well as the principles and purposesof sentencing under R.C. 2929.11, and has balanced the seriousness andrecidivism factors under R.C. 2929.12." (Emphasis added.) Thus, contrary to appellant's assertion, the court did state that it contemplated the statutory considerations.
 {¶ 16} Additionally, at sentencing, the court made reference to two of the factors that indicated appellant was likely to commit future crimes. R.C. 2929.12(D) provides in pertinent part:
 {¶ 17} "The sentencing court shall consider all of the following that apply regarding the offender, and any other relevant factors, as factors indicating that the offender is likely to commit future crimes:
 {¶ 18} "(1) At the time of committing the offense, the offender was * * * under post-release control pursuant to section 2967.28 or any other provision of the Revised Code for an earlier offense * * *.
 {¶ 19} "* * *
 {¶ 20} "(3) The offender * * * has not responded favorably to sanctions *Page 4 
previously imposed for criminal convictions."
 {¶ 21} Before sentencing appellant the court referenced appellant's extensive criminal history and observed, "he has been on every conceivable type of sanction and it did not work out." (Tr. 26). And it noted that appellant had been to the state penitentiary for felonious assault and aggravated robbery. (Tr. 26). These statements demonstrated that the court was considering R.C. 2929.12(D)(3). The court also questioned appellant about his parole and noted that appellant committed these crimes while out on parole from a previous offense. (Tr. 22). This statement indicated that the court was considering R.C. 2929.12(D)(1). Thus, although the court did not reference the statutory section by name and number, it clearly considered them in rendering its sentence.
 {¶ 22} For these reasons, we cannot conclude that the trial court erred in sentencing appellant. Accordingly, appellant's first assignment of error is without merit.
 {¶ 23} Appellant's remaining assignments of error each assert that he did not enter his plea knowingly, voluntarily, and intelligently in accordance with Crim.R. 11(C).
 {¶ 24} When determining the voluntariness of a plea, this court must consider all of the relevant circumstances surrounding it. State v.Trubee, 3d Dist. No. 9-03-65, 2005-Ohio-552, at ¶ 8, citing Brady v.United States (1970), 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747. Pursuant to Crim.R. 11(C)(2), the trial court must follow a certain procedure for accepting guilty pleas in felony cases. Before the court can accept a guilty plea to a felony charge, it must conduct a colloquy with the defendant to determine that he understands the plea he is entering and the rights he is voluntarily waiving. Crim.R. 11(C)(2). If the plea is not knowing and voluntary, it has been obtained in violation of due process and is void. State v. Martinez, 7th Dist. No. 03-MA-196,2004-Ohio-6806, at ¶ 11, citing Boykin v. Alabama (1969), 395 U.S. 238,243, 89 S.Ct. 1709, 23 L.Ed.2d 274.
 {¶ 25} A trial court must strictly comply with Crim.R. 11(C)(2) pertaining to the waiver of federal constitutional rights.Martinez, 7th Dist. No. 03-MA-196, at ¶ 12. *Page 5 
These rights include the right against self-incrimination, the right to a jury trial, the right to confront one's accusers, and the right to compel witnesses to testify by compulsory process. State v. Tucci, 7th Dist. No. 01-CA-234, 2002-Ohio-6903, at ¶ 11, citing Boykin, supra;State v. Ballard (1981), 66 Ohio St.2d 473, 478, 423 N.E.2d 115, fn. 4.
 {¶ 26} A trial court need only substantially comply with Crim.R. 11(C)(2) pertaining to non-constitutional rights such as informing the defendant of "the nature of the charges with an understanding of the law in relation to the facts, the maximum penalty, and that after entering a guilty plea or a no contest plea, the court may proceed to judgment and sentence." Martinez, supra, at ¶ 12, citing Crim.R. 11(C)(2)(a)(b).
 {¶ 27} It is with these standards in mind that we move on to consider appellant's second through fifth assignments of error.
 {¶ 28} Appellant's second assignment of error states:
 {¶ 29} "THE TRIAL COURT ERRED BY STATING TO THE DEFENDANT THAT HIS TESTIMONY WAS A NECESSARY ELEMENT TO THE PROCESS BY WHICH A JURY WOULD CONCLUDE HIS GUILT OR INNOCENCE."
 {¶ 30} At his plea hearing, the trial court misspoke and told appellant that he had a right to a trial where he would testify. It later correctly informed appellant that the state could not force him to testify against himself.
 {¶ 31} Appellant asserts that because the court failed to explain its contradiction, it could not have been sure he understood that he had a complete right to remain silent at trial. Thus, appellant argues that his plea was not entered into with a complete understanding of his rights.
 {¶ 32} Because the right against self-incrimination is a constitutional right, the trial court had to strictly comply with Crim.R. 11(C)(2) in ensuring that appellant understood that he was waiving this right. It appears that the court did so.
 {¶ 33} The trial court's information to appellant was as follows:
 {¶ 34} "Mr. Sellers, you have a right to a jury trial with 12 individuals with your testimony in support of the following allegations." (Tr. 5). *Page 6 
 {¶ 35} The court then went into detail about the allegations contained in each count and what the elements of each count were. (Tr. 5-7). The court then moved on to inform appellant of his right against self-incrimination. It stated:
 {¶ 36} "You have the right to remain silent at trial. You do not have to testify against yourself. The state has to prove these cases against you beyond a reasonable doubt and without your cooperation." (Tr. 7-8).
 {¶ 37} The information the court gave to appellant, when considered as a whole, was not misleading. The court's initial statement to appellant could be construed as meaning that he would testify at trial. However, this meaning is not necessarily so. The court's statement could also be interpreted to mean that appellant could testify if he chose to do so. After making this statement the court then went into a detailed description of the allegations, elements of each offense, and the witnesses that would testify. When it concluded this discussion, the court moved on to inform appellant of his right to cross-examine the witnesses against him. From there, the court went on to inform appellant, in detail, of his right against self-incrimination as stated above. The court's statements to appellant about his right against self-incrimination were clear and straight forward. Thus, if there had been any question in appellant's mind after the court's initial statement about whether he could be forced to testify against himself, the court's subsequent statements should have made clear to him that he could not be forced to do so.
 {¶ 38} Accordingly, appellant's second assignment of error is without merit.
 {¶ 39} Appellant's third assignment of error states:
 {¶ 40} "THE TRIAL COURT ERRED BY RECITING THE ALLEGATIONS AS IF THEY WERE FACTS OF THE CASE PRIOR TO ACCEPTING THE PLEA AS IF THE TRIAL COURT CONCLUDED THE ALLEGATIONS WERE FACTS BEFORE CONCLUDING THERE WAS A KNOWING INTELLIGENT WAIVER OF THE DEFENDANT'S RIGHT TO TRIAL."
 {¶ 41} In going over the offenses with which appellant was charged, the court stated:
 {¶ 42} "So Miss Leatherman would come in and identify you as the person *Page 7 
who did use a knife while committing or attempting to commit a theft offense. Put all of those elements together it's called aggravated robbery, robbing somebody with a weapon which you did. She would testify further that it happened on November 20 of 2004 here in Mahoning County.
 {¶ 43} "The jurors would then hear testimony from Angela Pagliarilo that on or about November 21 of 2004 in Mahoning County, Ohio, you did in attempting or committing a theft offense or fleeing immediately thereafter such attempt, that you did have a deadly weapon, that being a knife, and that you did display it, brandish it or indicate that you had it. * * * You put those together it's called aggravated robbery. And that you also did with that young lady without privilege to do so, knowingly, by force or threat, removed her from the place where she was found. That's the abduction charge, meaning, you used a knife committing the aggravated robbery, and that you did remove her from the location that she was found, and she would testify that you did purposely compel her to submit by force or threat of force to commit a sex — to engage in sexual conduct commonly referred to as rape. Ms. Pagliarilo would come in here and testify that in Mahoning County on November 21 of 2004 you did use a knife to her to remove her from the place that she was found and you did rape her.
 {¶ 44} "In addition to the two victims testifying, the police officers that performed the investigation would also come in and testify if there were any rape kits done. The nurse that did the rape kit would come in if there's any DNA testing performed. A specialist would come in and testify as to DNA." (Tr. 5-7).
 {¶ 45} Appellant takes issue with these statements arguing that they were not explanations of allegations but instead were conclusions about what the evidence would show if his case went to trial. He contends that by stating these allegations as facts, the trial court somehow violated Crim.R. 11(C)(2).
 {¶ 46} As the nature of the charges does not deal with a constitutional right, the court was only required to substantially comply with Crim.R. 11(C) here. "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is *Page 8 
waiving." State v. Nero (1990), 56 Ohio St.3d 106, 108, 564 N.E.2d 474.
 {¶ 47} Firstly, while appellant argues that the trial court violated Crim.R. 11 by making the above quoted statements, he does not point to any provision in the Rule that the court purportedly violated.
 {¶ 48} Secondly, in order to comply with Crim.R. 11(C)(2)(a), the trial court was required to explain to appellant the nature of the charges that he faced with an understanding of the law in relation to the facts. Martinez, 7th Dist. No. 03-MA-196, at ¶ 12. This is what the court's above quoted statements did. The court was attempting to explain to appellant the elements of each offense, the nature of the accusations against him, and how the law would apply to the witnesses' testimony.
 {¶ 49} Finally, appellant leaves out an important part of the court's statements to him. Immediately prior to making the above quoted statements, the court stated, "Mr. Sellers, you have a right to a jury trial with 12 individuals with your testimony in support of thefollowing allegations." (Tr. 5; Emphasis added). Thus, before going through all of the elements and potential witnesses' testimony, the court made sure to inform appellant that these were theallegations against him. Although a different method would be preferred, the trial court's approach was not error.
 {¶ 50} For these reasons, appellant's third assignment of error is without merit.
 {¶ 51} Appellant's fourth assignment of error states:
 {¶ 52} "THE TRIAL COURT ERRED BY NOT ADDRESSING THE REPEAT VIOLENT SPECIFICATIONS TO COUNTS ONE, TWO AN[D] FOUR."
 {¶ 53} Here appellant argues that the trial court failed to address the repeat violent offender specifications with him or to mention them in the change of plea form or judgment entry. Appellant claims that by failing to discuss the specifications in some way, the trial court did not ensure that he entered his plea knowingly, intelligently, and voluntarily.
 {¶ 54} As appellee points out, these specifications were dismissed. At the beginning of the hearing, both the prosecutor and appellant's counsel agreed that the dismissal of the repeat violent offender specifications was a part of the plea *Page 9 
agreement. (Tr. 3-4). Appellant did not plead guilty to those specifications. The trial court's job at the hearing was to ensure that appellant's guilty pleas to aggravated robbery, abduction, and rape were entered knowingly, intelligently, and voluntarily. This it did. Nowhere in Crim.R. 11 does it state that the court must ensure that the defendant understands charges or specifications that are dismissed and to which he is not entering a plea.
 {¶ 55} Accordingly, appellant's fourth assignment of error is without merit.
 {¶ 56} Appellant's fifth assignment of error states:
 {¶ 57} "THE TRIAL COURT ERRED BY NOT DEFINING HABITUAL SEXUAL OFFENDER IN THE PLEA AND SENTENCING."
 {¶ 58} Here appellant argues that the trial court failed to inform him of the definition of "habitual sexual offender" and failed to inform him that he was waiving the hearing required by R.C. 2950.09. Appellant claims that the trial court was required to provide him with such information before it could deem that his plea was knowing, voluntary, and intelligent.
 {¶ 59} Appellant contends that the court erred in failing to inform him that he was waiving the hearing required by R.C. 2950.09. However, this hearing is only required when an offender is classified as a sexual predator. Appellant did not stipulate to, nor was he classified as, a sexual predator. No such hearing is required for the court to designate an offender as a habitual sexual offender. R.C. 2950.09(E); State v.Cooper, 8th Dist. No. 84645, 2005-Ohio-3424, at ¶ 24, ("Under R.C.2950.09(E), there is no requirement that the court conduct a hearing before classifying a defendant a habitual sexual offender"), reversed on other grounds as stated in In re Ohio Criminal Sentencing StatutesCases, 109 Ohio St.3d 313, 847 N.E.2d 1174, 2006-Ohio-2109. Thus, the trial court did not err in failing to inform appellant that he was waiving an R.C. 2950.09 hearing.
 {¶ 60} Appellant also contends that the court failed to inform him of the definition of "habitual sexual offender." Appellant is correct that the court did not inform him of the definition of "habitual sexual offender." Hence, we must determine whether this failure renders appellant's plea unknowing or unintelligent. *Page 10 
 {¶ 61} Appellant's alleged error here does not deal with a constitutional right. Therefore, the trial court had to demonstrate substantial compliance with Crim.R. 11(C), as opposed to strict compliance.
 {¶ 62} In discussing the plea agreement, appellant's counsel stated that appellant was stipulating to being a habitual sex offender. (Tr. 4). Then, in going over appellant's plea agreement, the court reiterated to appellant that he was stipulating to the fact that "you are an habitual sexual offender subject to community notification." (Tr. 9). The court went on to explain to appellant that this meant he would be required to register once a year for 20 years with the local sheriff. (Tr. 9-10). It further informed him that he was required to notify the sheriff five days before moving from a given location. (Tr. 10). And it informed appellant that he had to register even when he moved within the same county. (Tr. 10).
 {¶ 63} This information was enough for the court to substantially comply with providing appellant the information he needed to enter a knowing and intelligent plea. In State v. Rogers, 7th Dist. No. 01-CO-5, 2002-Ohio-1150, the defendant stipulated to a sexual predator designation. On appeal, he argued that the court erred in designating him a sexual predator without a hearing. We disagreed and observed that because the trial court informed the defendant that it is required to hold a hearing to determine his status as a sexual predator, asked him if he was stipulating to that status, and informed him of the registration requirements, the waiver of the hearing and stipulation were done knowingly, intelligently, and voluntarily.
 {¶ 64} Here there was no hearing for the court to inform appellant of. And the court went over the registration requirements with appellant in detail. Furthermore, appellant's counsel stated on the record that appellant was stipulating to a habitual sexual offender classification. Additionally, in his written plea form, appellant stated that he was stipulating to a habitual sexual offender classification with community notification. This was sufficient to establish that under the totality of the circumstances appellant subjectively understood the implications of his plea.
 {¶ 65} Moreover, it is worth noting that at least two other districts have held that because sexual predator classification hearings are civil, rather than criminal, in *Page 11 
nature, criminal plea requirements are not to be imposed upon the sexual offender classification process. See State v. Bowens, 9th Dist. No. 22896, 2006-Ohio-4721, at ¶ 16 ("Nor are we convinced that the trial court must engage in a colloquy with a defendant who stipulates to a sexual predator classification and make a finding that the stipulation was made knowingly, voluntarily, and intelligently, as would be the case for a criminal guilty plea."); State v. Wheeler, 10th Dist. Nos. 03AP-832, 03AP-833, 2004-Ohio-4891, at ¶ 16 ("We accordingly find that we do not have the latitude to impose criminal plea requirements upon a sexual offender classification process, at least not to the extent of interjecting the strict requirement of a colloquy between the court and offender prior to accepting a stipulation in an R.C. 2950.09 hearing. While some form of inquiry is no doubt preferable, we cannot find that it is mandated, and thus we find no reversible error in this case.")
 {¶ 66} Accordingly, appellant's fifth assignment of error is without merit.
 {¶ 67} For the reasons stated above, the trial court's judgment is hereby affirmed.
Vukovich, J. concurs.
 DeGenaro, P.J., concurs. *Page 1